## Philadelphia, Appellant *v.* Meighan.

*Sewers—Assessments—Municipalities*:

Where a work of public utility—a highway, a water main, a sewer, etc.—has once been constructed, either by the public or at the expense of abutting owners, the latter cannot be charged with the cost of any subsequent reconstruction or change, even if this is a further benefit.

Where a city constructs a sewer on one side of a public highway, and assesses the cost thereof on the properties abutting on that side, it cannot, years afterwards, construct a sewer on the other side of the highway and assess the cost of it in the properties abutting on such side.

Argued Oct. 14, 1904. Appeal, No. 135, Oct. T., 1904, by plaintiff, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1898, No. 1225, M. L. D., on case stated in suit of Philadelphia v. John Meighan. Before RICE, P. J., BEAVER, SMITH, MORRISON and HENDERSON, JJ. Affirmed.

Case stated to determine liability for an assessment for the construction of a sewer.

VON MOSCHZISKER, J., filed the following opinion:

The case stated here shows that a public sewer was laid in Kensington avenue, by authority of an ordinance of the city

councils, " the cost thereof to be paid by assessment bills against the properties abutting on said street; " that the cost thereof, however, was in fact, paid solely by the properties on the side of the street in which the sewer happened to be put; that some years afterwards another sewer was built on the other side of the street, by authority of councils, the owners on that side only to be assessed; and that the city assessed the defendant in this case as an owner of property on that side of the street for a certain proportionate share of the cost of this second sewer. Therefore, the question presented is : This defendant being an owner of property on the side of the street upon which the second sewer was constructed, and not having paid any part of the cost of the first sewer, is he, under the law, liable for his proportionate share of the cost of the second sewer, or must it be held that his property having derived its full sewer benefits from the construction of the first sewer, he cannot be assessed for the second sewer.

Before entering upon a discussion of the legal principles and decisions applicable in the premises, we will consider the various ordinances of councils referred to in the case stated.

The first ordinance in point of date is a general ordinance approved May 12, 1866, entitled " An ordinance regulating the assessment upon property for the construction of sewers." The first section provides, as to the construction of sewers, that " the owners of ground in front whereof the same shall be laid shall pay for the expense thereof the sum of . . . for each foot of the front of their ground upon such street. The second section provides for bills to be made out against each property fronting thereon. Section three provides for applications for the construction of sewers of certain dimensions by owners of property fronting thereon. Sections four and five provide for the collection of bills by contractors. Section six makes it unlawful to construct private sewers under certain conditions. Section seven provides for permits, etc., in order to make connection with the sewer. Section eight regulates the construction of private sewers, and section nine is a repealing clause.

The first sewer, above referred to, was constructed by virtue of an ordinance approved November 9, 1892, which provided for the construction of a sewer in Kensington avenue, from Allegheny avenue to Clearfield street, without reference to the

side of Kensington avenue upon which the sewer should be placed. It is provided in the ordinance that the contractor shall accept the sums assessed upon and charged to the properties lying on the line of said sewer, in the manner and form authorized by the ordinance of 1866.

The second sewer was constructed by virtue of an ordinance of April 2, 1898, which authorized the construction of a sewer on "Kensington avenue (northwest side, northwest side only to be assessed), from Allegheny avenue to Clearfield street." This ordinance also provides that the contractor shall accept the sums assessed upon and charged to the properties lying upon the line of the sewer, in the manner and form authorized by the ordinance of 1866, etc.

It appears by the case stated that Kensington avenue, between Clearfield street and Allegheny avenue, is seventy feet in width, and that at the time the first sewer was built there were double passenger railway tracks along the center of the avenue, both of which tracks are still in service. By the Act of May 8, 1866, P. L. 1074, it is provided that "in laying water and gas pipes and constructing culverts on any street used for a passenger railway track, in the city of Philadelphia, the officers and agents of said city shall be required to lay such pipes and construct such culverts alongside of the railway track, and in such manner as not to interfere with or obstruct the running of the cars." It is most apparent that the sewer was constructed on one side of the street and not in the center, in order to comply with this act. The ordinance of 1866, before referred to, provides throughout for assessments against all the properties abutting on the sewer, and why the properties on one side only were assessed in this instance does not appear, but it does appear by the case stated that under such an assessment this first sewer was fully paid for.

The general principle of law is that where a property is first benefited in kind by a municipal improvement it is assessable therefore, but where it has once enjoyed the particular kind of improvement, the property is not assessable for a second improvement of the same character, even though the latter may differ in degree and may be to the apparent material benefit of such property. The reasonableness, necessity and justice of such a general rule can readily be appreciated when

we consider that upon a sale of real estate where a municipal improvement has been made, the land takes a value therefrom, on the presumption that it has already borne its tax for an improvement of that kind and will not be so taxed again ; and a price paid is presumably fixed accordingly.

An examination of the leading cases in which the application of the rule is to be found is most illustrative and profitable :

Hammett v. Philadelphia, 65 Pa. 146, seems to be the father of the line, and it is there laid down that the legislature may confer upon municipal corporations the power of assessing the cost of local improvements upon the properties benefited.    But when a street is opened and paved, thus assimilated with the rest of the city and made part of it, all the particular benefits to the locality derived from the improvement have already been received and enjoyed ; and a property owner cannot be compelled to pay for a second pavement, although better in character and greater in value than the first pavement.

In Harrisburg v. Segelbaum, 151 Pa. 172, Market street was a macadamized road, the cost of such improvement having been borne by the public and not by the abutting owners.    It was afterwards paved with asphalt, and the city sought to force the abutting property owners to pay for the improvement, but it was held by authority of the principle laid down in the line of cases beginning with Hammett v. Philadelphia, that the benefit derived by the abutting property owners was only different in degree and not in kind from that derived from the original improvement, and therefore they could not be assessed for such improvement.    The court said on page 181 : " At first blush, there is apparent plausibility in the position, that the expense of one paving, at least, should, at some time or other, be charged against and paid by owners of the abutting property, but, in view of the principle underlying Hammett v. Philadelphia, and the whole line of cases, including Williamsport v. Beck, we think the position is more plausible than sound." On page 183 : " To hold, as we have been urged to do, in this case, that the owners of property abutting on Market street are liable for the cost of the asphalt paving merely because the expense of the original paving or macadamizing in 1832 was not paid by the then owners, but by the public of which they were

part, would be a sad departure from the principle of all our cases."

In City of Erie v. Russell, 148 Pa. 384, it was held that the reasoning which supports the rule established in relation to the repaving of streets applies with equal pertinence and force to the reconstruction of sewers, and the principle laid down in Hammett v. Philadelphia, applies as strongly in the one case as in the other.

In West Third street sewer, appeal of the City of Williamsport, 187 Pa. 565, Erie v. Russell is followed, and it is further held that it matters not whether the original sewer was paid for by the abutting property owners, or was constructed by the city at its own expense; in either event the abutting property owners cannot be charged with the cost of reconstruction. Mr. Justice McCollum quotes from the opinion of the court below in this case : " A sewer once constructed gives to the abutting property owner, every benefit and advantage that a sewer gives him over the general public. The benefits, thereafter derived, either from repairing or reconstructing the same, are only such as he enjoys in common with the public. To allow an assessment on the abutting properties in such case would be to levy a tax on the owners, not for a local improvement, but for benefits derived by the public, in which he does not participate or derive any benefit or advantage beyond that he would have in common with all other citizens."

We see by these cases that it matters not who pays the cost of an original construction or extension of the municipal system of public improvements, to a particular piece of real estate, for after the real estate has once had the improvement and the same has been paid for, even though such payment may not have been by the owner of the property, a second improvement, differing in degree but not in character, while perhaps much better and much more costly, cannot be assessed against the property.

Here the sewer assessment covering the front of the property in question appears by the case stated to have been fully paid by the owner of the property immediately opposite, against whom, for some undisclosed reason, it was exclusively assessed contrary to the terms of the ordinance.

It is true that the first sewer was not placed in the center

of the street; but nowhere in the law or in the general sewer ordinances of 1866 can anything be found that would justify a holding that where a street is wide, with car tracks in the middle, as here, and, therefore, in compliance with law, a sewer is laid on one side, that the properties along the opposite side of the street front on such a sewer any the less, or that after full payment of the sewer assessments as they may be levied by the city, the abutters on the one side only would be entitled to connect therewith to the exclusion of those on the other side. A property facing on a street fronts or abuts on the entire street and not on one side only: In re Thirteenth Street, 16 Pa. Superior Ct. 127.

The first sewer, under the facts as presented in the case stated, must be held to have accrued to the benefit of all the properties fronting thereon on each side of the street. It would therefore seem to follow that the defendant had a clear right to connect at any time with this sewer of 1892, and he could have enforced such right by mandamus, if necessary, by complying with the proper local requirements as to permit. It may be that since the construction of the sewer of 1898, the defendant would, for public convenience, be obliged to connect with that sewer, and not with the sewer of 1892, but that would be a mere matter of regulation, and would not in itself impose upon him the burden of paying for the second sewer.

If the city deemed it wise and for the general public good and convenience to have more than one sewer in this particular street at that particular point, it had a right to construct a second sewer; but in contemplation of law, such second sewer gave the defendant in this case and his property no additional advantages of a different kind from those the property already enjoyed; it only gave him advantages of the same character, although perhaps, of a higher degree, for which, under the cases, an abutting owner cannot be legally assessed or made to pay.

Judgment on the case stated is entered for the defendant.

*Error assigned* was in entering judgment for defendant on the case stated.

*James Alcorn* and *John M. Patterson*, assistant city solicitor, with them *John L. Kinsey*, city solicitor, for appellant.—The

sewer constructed on the southeast side of Kensington avenue was paid for by the people whose property abutted on that side of the street, only, and the assessment levied against them, only. The sewer was to be used by them, only. It could not be used by the appellee because of its great distance from his property, and the fact that a line of car tracks came between his property and the sewer. It neither benefited his property nor affected it in any other way and, so far as he was concerned as an abutting property owner, it did not exist: Thrall v. Williamsport, 18 Pa. C. C. Rep. 330.

Councils are the sole judges of the necessities for sewers, their purposes, and the rates to be charged for constructing them, and neither the court nor the jury will encroach upon these functions: Carr v. Northern Liberties, 35 Pa. 324; Michener v. Phila., 118 Pa. 335; Girard Life Ins. Co. v. Phila., 88 Pa. 393.

*Alex Simpson, Jr.*, for appellee.—The law necessarily and conclusively presumes that the later local tax for the improvement does not benefit the property, and these special assessments are laid and can only be sustained upon the theory of special benefits to the properties assessed : Hammett v. Phila., 65 Pa. 146 ; City of Erie v. Russell, 148 Pa. 384 ; Harrisburg v. Segelbaum, 151 Pa. 172; Appeal of Sewickley M. E. Church, 165 Pa. 475 ; Williamsport's Appeal, 187 Pa. 565.

While it is true, of course, that we cannot now compel the city officials to allow us to connect with the first sewer, because of the fact that the second one is more convenient, yet before 1898 we could have compelled them to allow us to connect with the first sewer, and can compel them now to allow us to connect with the second: Bell Telephone Co. v. Com. ex rel., 17 W. N. C. 505 ; Davis v. Electric Reporting Co., 19 W. N. C. 567 ; Mercur v. Media Electric Light, etc., Co., 17 Lanc. Law Rev. 374 ; Phila. v. Matchett, 116 Pa. 103.

It is true that this right is subject to reasonable regulations set forth in or authorized by act or ordinance, if they apply to all alike, as for instance the requirement that all previous water or gas consumed upon the premises must be first paid for: Girard Life Ins. Co. v. Phila., 88 Pa. 393; Com. v. Wagner, 24 W. N. C. 171; Com. v. Phila., 132 Pa. 288.

The allegation by appellant that the fact of nonpayment would prevent the issuing of a mandamus, even if otherwise one might be allowed, is answered by Phila. v. Matchett, 116 Pa. 103 and Lawrence v. Phila., 14 W. N. C. 421.

OPINION BY SMITH, J., January 17, 1905:

A city ordinance approved May 12, 1866, "regulating the assessment upon property for the construction of sewers," provided (sec. 2) that upon the completion of any sewer the expense of its construction should be assessed "against the several owners of ground fronting on the street in which said sewer may lie, in proportion to their respective fronts;" and section 3 made it a condition of contracts for the construction of such sewers "that the contractor shall accept assessment bills prepared under section 2" as so much cash paid on the contract. An ordinance approved November 9, 1892, authorized the construction of sewers on various streets, and made it a condition "that the contractor shall accept the sums assessed upon and charged to the properties lying on the lines of said sewers, in manner and form authorized by" the ordinance of May 12, 1866.

Among the sewers constructed under the ordinance of 1892 was one on Kensington Avenue. Instead, however, of assessing its cost against the abutting owners on both sides of the avenue, it was assessed only against those on the southwest side, and no part of it was paid by those on the opposite side. The reason for this, apparently, was that there were double passenger railway tracks along the middle of the avenue; and the sewer was laid on the southwest side of these.

An ordinance approved April 2, 1898, authorized the construction of a sewer on "Kensington Avenue (northwest side, northwest side only to be assessed)." The question presented here is whether an assessment against an owner on the northwest side of the avenue, for a portion of the cost of this sewer, can be sustained.

The principles that govern the determination of this question are settled by the decisions of the Supreme Court in a number of cases, among which are Hammett v. Philadelphia, 65 Pa. 146, Erie v. Russell, 148 Pa. 384, Harrisburg v. Segelbaum, 151 Pa. 172 and Williamsport's Appeal, 187 Pa. 565. The

conclusion of the learned trial judge is sustained by the authorities cited in his opinion, and is amply vindicated by his application of the principles which they have established.

When a work of local public utility,—a highway, a water main, a sewer, etc.,—has once been constructed, either by the public or at the expense of abutting owners, the latter cannot be charged with the cost of any subsequent reconstruction or change, even if this is a further benefit. Under the ordinances of 1866 and 1892, the original construction was for the benefit, locally, of " the several owners of ground fronting on the street," on both sides, and its expense was to be met by assessments against them. Their liability cannot be extended beyond the construction thus authorized and carried out. The construction of 1898 was but an enlargement of sewer capacity or facilities ; an improvement the same in kind, and differing only in degree of convenience. The original construction gave the abutting owners, on both sides of the avenue, all the benefits and made them liable for all the assessments provided for by the ordinances of 1866 and 1892. "Assessments for special local benefits, if exercised at all, must be exercised at or near the time the benefits accrue:" Harrisburg v. Segelbaum, 151 Pa. 172. The failure of the city authorities to assess a proportionate part of the cost of the original construction against owners of property on the northwest side of the avenue created no liability on the part of the latter for a supplemental construction of the same character and designed for the same purpose, and which, in effect, was part of the sewerage of the avenue provided for by the earlier ordinances.

Judgment affirmed.