## Hinaman v. Vandergrift

*Greevy, Knittle, Fisher & Rice*, for plaintiff.
*John P. Campana*, for defendant.

GREEVY, J., August 25, 1958.—In this action plaintiffs, as abutting property owners, question the legality of an assessment levied by defendants for part of the costs of constructing sidewalks along State Highway Route No. 15 (Legislative Route 20).

The complaint asserts that the ordinance of February 1, 1958, upon which such assessment is based is invalid and illegal. . . .

## Discussion

Plaintiffs rely upon three claims of law, to wit:

1. Article IX, sec. 1, of the Constitution of Pennsylvania prohibits the assessment of abutting property owners for a munipical improvement replacing a simi-

lar improvement previously enjoyed by the property, regardless of whether the cost of the original improvement was borne by the property owner or not.

2. The ordinance is discriminatory because of the exoneration provision and therefore the ordinance is unconstitutional.

3. The Second Class Township Code did not and does not empower defendant supervisors to adopt said ordinance.

The pertinent facts, summarized, are as follows:

In 1935, as part of a WPA project, sidewalks were constructed on the State highway right of way in front of the properties now belonging to plaintiffs and some other abutting property owners. The construction was accomplished under an agreement whereby the property owner paid for the materials and the WPA supplied the labor without cost to said property owners.

Subsequent to 1935, other abutting property owners, entirely at their own expense, constructed sidewalks on the highway right of way, parallel with and contiguous to those built with WPA aid. In the 1935 construction and in all subsequent sidewalk construction, the State Highway Department, hereinafter referred to as the department, retained the right to widen the highway, thus destroying said sidewalks without any duty on the department to replace such sidewalks.

As early as 1954, the department and defendant supervisors entered into discussions relating to the contemplated widening of said highway. On July 5, 1955, in accordance with the resolution adopted by defendant supervisors on July 2, 1955, defendant township entered into an agreement with the department to pay the sum of $23,000 to the department and for that amount the department undertook to construct new sidewalks on the property abutting the department's right of way and certain storm sewers. Such new sidewalk construction was to be accomplished on

the property of every abutting owner where a sidewalk had previously existed, and apparently on some additional property.

Subsequently, defendant supervisors notified all abutting property owners over whose property sidewalks were to be constructed that a meeting of the supervisors would be held on October 1, 1955, relating to such sidewalk construction. Of the 52 property owners involved, 31 appeared at the meeting. Representatives of the department were in attendance and explained that the department would not assume the expense of sidewalk construction but that the department was willing to perform such construction contemporaneous with the widening of the highway. Some statement was made by defendant supervisors to the effect that the township would contribute what it could to the cost of new sidewalks. Effort would be made to obtain county funds; those who built their sidewalks without WPA assistance would be exonerated from any contribution for said sidewalk and the remainder of property owners would be expected to pay some part of the cost of constructing sidewalks on their property. There is considerable confusion as to what transpired thereafter at said meeting. At least one property owner stated that defendant supervisors were not complying with legal requirement. Some form of vote was apparently held on the general proposition that the department construct the sidewalks. At least five property owners left the meeting prior to the alleged vote. Neither the number nor identity of those voting is certain, nor is it evident that any opportunity was given to register opposition to the question voted on. There was considerable evidence introduced during the trial to the disposition of county funds and rebates from the department, but such evidence is not now pertinent to the ground upon which this decision is bottomed.

In the township budget of 1956, one mill was appropriated for this sidewalk construction and some consideration was given by defendant supervisors to the necessity for sidewalks for the protection of the traveling public.

The department widened the highway and constructed the sidewalks and sewers. The cost to the department for that portion of the work chargeable to the township was slightly in excess of $24,000, but because of the agreement the township was charged but $23,000. The department paid $6 for each square yard of sidewalk incorporated in the property owners' driveways, and $4.50 per square yard for the remainder of the sidewalk.

On November 6, 1957, defendant supervisors sent bills to plaintiffs and other property owners based on unit prices of $5 for each square yard for driveways and $3.50 per square yard for the remainder of the sidewalk. These bills bore the notation "As per agreement, we are submitting bill as follows". Defendant supervisors exonerated from such payment those property owners who had constructed the original sidewalks without WPA assistance. Obviously to this point defendant supervisors were relying upon some claimed contractual arrangement with the property owners but soon found that such an arrangement did not exist. Their awareness of this defect resulted in the adoption of the ordinance in question on February 1, 1958. Assessments were subsequently sent to the property owners indentical with the original bills, except that these bore the notation "As per ordinance . . ." rather than "As per agreement . . .". Again, the property owners who constructed their own original sidewalks were exonerated from assessment.

The court is uninformed as to defendant supervisors' reason for failing to consult with the township solici-

tor when these problems originally arose, but their failure to do so certainly opened a "Pandora's box".

The court has considerable doubt that plaintiffs' first claim of law is pertinent to this case. The original sidewalks were laid within the highway easement and all parties contemplated the eventual destruction of such sidewalks when the need for widening the highway arose. The original improvement was by its nature temporary, and cannot be considered similar to the permanent improvement now constructed.

The court, however, is relieved of the burden of finally deciding this first claim of law because the ordinance is patently unconstitutional and therefore invalid under plaintiffs' second claim of law. All of the property owners who had sidewalks located within the highway easement were in exactly the same position when the new construction was undertaken. All had sidewalks temporary in nature. Two of plaintiffs purchased their property subsequent to the original construction made with WPA assistance, and the existance of such sidewalks undoubtedly affected their pudchase price: See City of Williamsport v. Beck, 128 Pa. 147; Philadelphia v. Meighan, 27 Pa. Superior Ct. 160; City of Harrisburg v. Segelbaum, 151 Pa. 172.

Comparison between part payment made by those who had WPA assistance and full payment made by those who did not, raises innumerable objections. Fair dealing would require comparison of dollar amount, the value of the dollar at the time of construction and myriad other pertinent questions. There is no justifiable factual basis for the exoneration contemplated in the ordinance and granted by defendant supervisors. The existence of this exoneration destroys the entire ordinance rather than merely making illegal such exoneration. It is true that the assessment on plaintiffs' property is for less than the cost of the sidewalk in-

stalled on their property. Our law requires, however, that all taxpayers in the same circumstances be taxed alike and none be preferred over the other. The Constitution, article IX, in sec. 1, ordains that "All taxes shall be uniform, upon the same class of subjects . . ."

By their actions and testimony it is apparent that defendant supervisors at least recognized the possibility that relief of public danger and hazard might require the construction of this sidewalk. Whether or not defendant supervisors would have adopted this ordinance without the exoneration clause is a matter of pure speculation. It may well be that the supervisors would have then preferred to investigate the question of public hazard.

The Second Class Township Code of May 1, 1933, P. L. 103, as amended, 53 PS §65101-67201, controls the power of defendant supervisors to construct this sidewalk, assess the property owners for such construction and adopt the ordinance in question. Article XIV, sec. 1401, 53 PS §66401, is limited to applications by a particular property owner and is not applicable. Section 1402($a$) 53 PS §66402, is limited to "petition of owners of property representing a majority in number of feet front of the properties abutting on the roads or highways" and is not applicable. The so-called vote at the October meeting cannot be held to be such a petition. Section 1402($b$) of the same act is the section upon which defendants purport to rely. This section provides that the township supervisors may construct sidewalks "pursuant to an ordinance" authorizing such construction and place the expense on the abutting property owners in proportion to their frontage. Plaintiffs contend that to accept defendant's proposition would give the ordinance a retroactive effect for the sidewalks were constructed prior to the date of the ordinance.

Our appellate court stated, in the case of Philadelphia, to use v. Phillips, 179 Pa. Superior Ct. 87, 94: "A cardinal principle of statutory construction frequently applied by the courts has found expression in section 56 of the Statutory Construction Act of May 28, 1937, P. L. 1019 in the following language: 'No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature.' 46 PS §556; See Barnesboro Borough v. Speice, 40 Pa. Superior Ct. 609 (1909); Anderson v. Sunray Electric Inc., 173 Pa. Superior Ct. 566, 98 A. 2d 374 (1953).

"This principle applies to ordinances as well as statutes. Sawdey Liquor License Case, 369 Pa. 19, 85 A. 2d 28 (1951)."

Whether or not this particular construction can be said to be "pursuant to an ordinance", when the ordinance is enacted after the construction, need not here be decided. In addition to the unconstitutionality of the ordinance for the reason stated it is readily discernible that this ordinance does not purport to comply with this section of the statute.

Section 1404 of the Second Class Township Code, 53 PS §66404, permits the supervisors to construct sidewalks at township expense to reduce a hazard to the traveling public. Section 702, 53 PS §65738, permits the supervisors to expend money from the general fund for the construction of sidewalks whenever deemed necessary for the protection of the traveling public. Whether the desire to reduce danger to the traveling public, but with the understandable reluctance to spend so much of the township funds, was the underlying motivating factor for defendant supervisors' activities, cannot now be determined. In any event the adoption of the present ordinance and the levy of the assessment against plaintiffs was not within the power of defendants.

We make the following

### *Conclusions of Law*

1. The ordinance of February 1, 1958, violates the tax uniformity provision of article 9, sec. 1, of the Constitution of Pennsylvania.

2. The ordinance in question is invalid and illegal.

3. Judgment must be entered for plaintiffs.

### *Order*

And now, August 25, 1958, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. That the ordinance of February 1, 1958, is invalid and illegal.

2. That judgment be and it is hereby entered for plaintiffs.

3. That the costs of these proceedings be paid by defendants.

The prothonotary is directed to enter this decree nisi and to give notice to the parties or counsel of record of this decree and if no exceptions are filed within 20 days hereafter the decree shall be entered as a final decree by the prothonotary as of course.