GUSTAV DETTSLOFF et ux., respondents,

*v.*

ELWOOD HOCKSTETTER et ux., appellants.

[Decided May 19th, 1924.]

On appeal from a decree in chancery.

*Mr. Howard L. Miller,* for the appellants.

*Mr. Joseph Beck Tyler,* for the respondents.

PER CURIAM.

The bill in this case was filed by the complainants, who are the owners of a house and lot in the village of Fairview, to restrain the appellants from violating a restrictive covenant prohibiting the use of their property for any purpose other than that of a dwelling. The situation disclosed by the pleadings and proofs was as follows: The Fairview Realty Company, an agency of the United States Emergency Fleet Corporation, purchased a tract of land (comprising the present village) in the neighborhood of Camden at the beginning of the world war; laid this tract out in streets and lots, and erected thereon some thirteen hundred houses, largely for the purpose of providing homes for the employes of the fleet corporation. After the close of the war this governmental agency arranged to make a public sale of all the houses, buildings and real estate, comprising the village of Fairview, and this purpose was carried out, practically all of the property having been sold to different parties at that sale. When it was held, public announcement was made that each piece of property would be sold subject to certain building restrictions, and these restrictions were inserted in each deed executed and delivered to a purchaser. One of the restrictions prohibited

the use of any of the buildings in that part of the village in which the respective properties purchased by the appellants and the respondents were located for any purpose except that of residences. Notwithstanding the restriction, the appellants undertook to carry on in the premises purchased by them a store and place of business, in violation of the restrictive covenant, and thereupon the present bill was filed.

The hearing resulted in a decree in favor of the respondents, restraining the appellants from further using the property purchased by them as a store and business place, and it is from this decree that the appeal has been taken.

Prior to the filing of the bill in the present case another suit had been instituted by the present respondents against one Banes, to restrain him from continuing a similar violation of this restrictive covenant. The case came on to be heard before Vice-Chancellor Leaming, and at its conclusion a decree was advised, granting similar relief to that provided in the decree now before us. The opinion of the vice-chancellor, in that case, expressly adopted by Vice-Chancellor Ingersoll in the present case, and, so far as it is applicable to the present case, is as follows:

"I am unable to believe that there can be any doubt touching the duty of the court to prevent these properties being used for business purposes.

"It seems to me that if any case of this nature can properly call for equitable interposition upon the part of the court of chancery this case is one of them. The broad aspect of the entire situation may be stated in the general terms that this entire community, that is, the owners of every property within this restricted area in this entire community have agreed as they have purchased these properties that they will not use any of the properties for business purposes, and the properties were all bought at a public sale at which the announcement was made that no properties within the restricted territory could be used for business purposes. Under these conditions all of them were purchased; in all, some one thousand three hundred and fifty improved properties were

sold with the understanding upon the part of everybody that no one of those properties should be used for business, excepting two or three where outstanding leases existed, and the agreements were, they could not be so used after those leases expired.

"The theory upon which those community agreements are enforced is that there has accrued to everybody the rights as are defined in these uniform restrictive covenants, and that it is inequitable upon the part of any person after entering into a general scheme of that kind to repudiate their agreement and violate the covenants in a manner that they had agreed not to do. A suit of this nature is not a suit for the enforcement of a covenant, strictly speaking. The written covenants are all made with the vendor who sold these properties; they do not run in terms to grantees of the vendor, they are in form personal to the vendor, and this is not a suit by the vendor for the enforcement of these covenants as such, it is a suit by one of the purchasers against other purchasers to compel them to observe good faith in this general scheme, and it is the uniform covenants, to which all have agreed, which we turn to to ascertain the scope and tenor and character of that general scheme, and it is from the general scheme defined by these covenants that the equity arises as distinguished from a suit to enforce specifically a covenant by a person to whom the covenant has been made.

"The point has been made that the Fairview Realty Company has waived the observance of these covenants; has lost the right to enforce them by acquiescence in their violation since the sales were made. The Fairview Realty Company has disposed of all of its property save two or three vacant lots, I think, which have not yet been disposed of; the interest of the Fairview Realty Company has gone, essentially gone. It may be said to be entirely immaterial to the Fairview Realty Company what happens in these properties in the future so far as any interest is concerned on the part of that company. Therefore, it is unreasonable to suppose that the Fairview Realty Company would be active or take any part

in enforcing these covenants. Why should they? The covenants were in fact adopted and inserted in all deeds for the benefit of the community.

"But it has been held in this state by a long series of cases that there is all the difference in the world between a land company, the original land company, a town-site proprietor, undertaking to enforce a covenant of this nature and an individual lot owner, undertaking to enforce the same covenant as a part of a general scheme. The ordinary land company is in most cases interested in the entire tract, and laches would be charged against it or acquiescence would be charged against it by reason of violation on any part of the tract, whereas it is held that the single lot owner is really interested only in violations that affect his particular interest, violations on lots near him, where if the covenant is violated the individual lot owner will suffer; therefore, a violation of the covenant on a distant part of the tract is not held to be a matter of material concern to the individual lot owner, and is not a matter of laches and not a matter that can be urged as acquiescence or abandonment on his part. So, the inactivity of the Fairview Realty Company in enforcing these covenants, after selling all but two or three lots at this public sale, is a matter which it seems to me is immaterial at this time.

"The claim is also made, however, that the complainants in this case were not vigilant in enforcing these covenants against nearby violations of the covenants where the violations seriously affected the complainants' enjoyment of their property. A claim of that nature can always be made in either of two situations. One is where an estoppel has arisen, that is, where a person who has the right to enforce a covenant has stood by and allowed others to make improvements without protesting, so that it would be inequitable to enforce the covenant after allowing the improvements to be made and expenditures incurred. Changes in property might be made to such an extent that an injunction against conducting a business in the property would be a source of pecuniary loss— loss of money which had been expended by reason of, and

wholly by reason of, the failure of the complainant to interfere. That is an estoppel. There is no estoppel in this case, in fact, no estoppel is pleaded, and the proofs do not show any losses that will be sustained by either of the defendants by reason of inactivity upon the part of complainants, by reason of the complainants' delay in bringing this suit as promptly as might have been.

"The other basis for such a claim is where want of a promptness or activity may be successfully urged as laches or abandonment. Acquiescence cannot be established in this case under the evidence.

"No rights had arisen which had not existed before; no defenses had arisen that could not be interposed by reason of the delay. Acquiescence amounting to a waiver or to an abandonment of one's rights is a matter of substance and not mere form of delay enforced by justifiable circumstance.

"Nor would anyone seriously claim that the complainants at any time abandoned the idea of enforcing these covenants or entertained the idea of doing it, nor have other property owners abandoned these covenants excepting those who are violating them. The very few violations of these covenants indicate respect of the general scheme more nearly than it does a disregard of the covenants; the community as a whole has observed these covenants and has respected them, the very small percentage that have violated them accentuates that fact. If a community were disregarding covenants of this nature, out of one thousand three hundred improved properties there would be more violations than appear in this case; but all the violations that have arisen have been recent, and a considerable percentage of those that have been named have arisen since the suit was brought. There seems to have been a recent tendency to turn these properties into stores, and my conclusion is that it is peculiarly inequitable for the owners of these properties to do so, that the equitable rights of those who purchased must be enforced, and that there has been at no time any such acquiescence, laches or abandonment of this scheme, or other acts upon the part of the com-

plainants or others in this community, that should deny this court the right to enforce these covenants, or rather, to enforce the general scheme."

For the reasons stated in this opinion, the decree now under review will be affirmed.

*For affirmance* — THE CHIEF - JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, GARDNER, VAN BUSKIRK, CLARK, MC-GLENNON, KAYS—15.

*For reversal*—None.