Complainant's bill is for the enforcement of a restrictive covenant which provides that defendants' lot shall not be used for "any trade or business or factory of any kind or nature whatever, and that any part and all of said property is to be strictly used for residential purposes only. * * * This covenant is to be construed as running with the land." It is admitted that defendants propose to use their lot for business purposes.
Defendants' property is in Fairview on the westerly or Fairview side of Mt. Ephraim Pike. The defense is based upon a claim that the development of business enterprises along the easterly side of that Pike, in unrestricted territory of another municipality, requires this court to deny the relief now sought.
The territory known as Fairview was purchased, laid out and built upon during the late war by an agency of the United States government, all buildings being leased and subjected to the restrictions above quoted, except as to a small territory around Yorkship Square, where stores were permitted. At the close of the war this Fairview tract had become a community of between one thousand five hundred and one thousand six hundred homes. The government agency then determined to sell at public sale all the property owned by the government, giving a preference right of purchase to tenants, and called a public meeting to determine whether the community desired the perpetuation of the restrictive covenants. The meeting resulted in an approval of these covenants and thereafter all lots comprising the tract were sold separately, and these uniform covenants were embodied in all deeds of conveyance. Since then these covenants *Page 432 
have been uniformly observed except as to a few infractions which have been enjoined. See Dettsloff v. Hockstetter (Court ofErrors and Appeals), 96 N.J. Eq. 391. At this time Fairview is a purely residential community with no business enterprises except the stores in the store district already referred to.
One of the boundaries of Fairview is Mt. Ephraim Pike. Defendants' property is one of the lots on the westerly or Fairview side of that Pike. The easterly side of that Pike is in another municipality. At the time these covenants were established the easterly side of that Pike was unimproved except as to one frame building. Since then Mr. Ephraim Pike has become a state highway and is now one of the main arteries of travel between the Delaware river and the Atlantic ocean resorts. At this time there exists on the easterly side of Mt. Ephraim Pike opposite Fairview three large garages, one of which is the building already referred to as a farm house, a large moving picture theatre, a bakery shop, a lunch wagon, four or five stores, and at least three rows of approximately ten stores each, all used for business purposes. No residences are there, except in the stores, which are in most instances occupied as stores and homes for their proprietors.
Defendants' property is on the westerly side of and faces on Mt. Ephraim Pike and is northerly of and adjacent to Collings road, which road extends easterly and westerly through the Fairview tract to Mt. Ephraim Pike. On the westerly or Fairview side of Mt. Ephraim Pike there are six houses northerly of Collings road and twenty-three southerly of Collings road; all residences. Of the six northerly of Collings road three are now vacant, including defendants' property. Of the twenty-three southerly of Collings road at least three are now vacant, and one is occupied by a physician.
Complainant's residence is on the northerly side of Collings road in the rear of defendants' property, two residences intervening. From the evidence, it may be said to be reasonably clear that the growth of business on the easterly side of Mt. Ephraim Pike has made the properties on the westerly or Fairview side of that Pike much less desirable as residences, *Page 433 
and to that extent the properties have been injured in value as residences by the change of conditions which have occurred since the covenants were imposed.
In England the rule appears to be firmly established that a change in the character of a neighborhood will not impel a court of equity to deny the enforcement of a restrictive covenant of this nature, where the change which has taken place was beyond the control and independent of the action of complainant or those under whom he holds. Osborne v. Bradley (1903), L.R. 2 Ch.446, 450; Sayers v. Collyer, L.R. 28 Ch. D. 103; Craig v.Greer (1899), 1 Ir. Ch. 258. In these cases the leading case of Bedford v. British Museum, 2 Myl. K. 552, is distinguished in that in the Bedford Case the acts of complainant contributed to the changed conditions which made burdensome the restraint which was sought.
In this country some courts have adopted and others have rejected the view that the change in the character of a locality may so far defeat the object and purpose of the covenant and render its observance so burdensome to defendant and of so little benefit to complainant that its enforcement will be denied even though complainant should in no way be in fault or responsible for the change. Trustees of Columbia College v. Thacher,87 N.Y. 311, is a leading case of that class. There the elevated railway and its platforms and stations which were constructed in front of defendants' property were found to render its privacy and quiet as a residence impossible; this condition was held not to be within the contemplation of the parties, especially since the road was constructed by legislative sanction and beyond the defendants' power of prevention.
In this state in Page v. Murray, 46 N.J. Eq. 325,
Chancellor McGill appears measurably to sanction the New York rule, but found as a fact that the complainant's conduct equitably denied him the relief which he sought. In Sandusky v.Allsopp, 99 N.J. Eq. 61, 64, Vice-Chancellor Backes, in sustaining a restrictive covenant, as against a claim of change in the character of the neighborhood, says: "And it is no answer to those who are anxiously guarding the light, air and prospect *Page 434 
of their homes, assured by the covenant, and it is a vain appeal to equity to remain dormant, that the complainant's lot is no longer desirable for a single dwelling house, because it can be more profitably utilized for an apartment for many families, and because others in that section, strangers to the covenant, have advanced their holdings by such structures. When the parties bound by the covenant have not themselves waived or abandoned or forfeited the restriction upon the use of land, a change of character of the surrounding territory will not induce a court of equity to refuse to enforce the covenant unless the influence of the change upon the restricted area is such as to clearly neutralize the benefits of the restrictions to the point of defeating the object and purpose of the covenant. Page v.Murray, 46 N.J. Eq. 328; Trustees of Columbia College v.Thacher, supra. Unless the restrictions are stripped of all material benefit, a party to the covenant is entitled to protection."
In the instant case it seems unnecessary to determine whether the English rule, already referred to, may be said to obtain in this state. Assuming as a fact that the business enterprises now existing on the easterly side of Mt. Ephraim Pike and the increased travel on that highway have operated to render defendants' property materially less desirable or even undesirable as a residence property and materially more valuable as a business property, it seems clear that in the circumstances of this case it would not be equitable to withhold the restraint now sought.
The entire town of Fairview is distinctively a residential town, originally established and since strictly maintained as such; the only businesses which exist in the entire town are the stores within the store district as originally established. As is said in DeGray v. Monmouth Beach Club House Co., 50 N.J. Eq. 329,339, the equity flowing from these uniform covenants springs from the presumption that each purchaser has paid an enhanced price for his property in reliance on these covenants which he is bound to observe and is entitled to have others observe. Mt. Ephraim Pike formed a boundary of the Fairview tract and the easterly side of that Pike *Page 435 
was then, as it is now, in another municipality and unrestricted. Purchasers of lots in Fairview fronting on that Pike could not have reasonably anticipated that the unrestricted easterly side of the Pike would remain unimproved or would not be devoted to business enterprises, or that travel over that highway would not increase; the establishment of business enterprises along the easterly side of that highway in that unrestricted territory would seem the more reasonable anticipation, and it was well within the privilege of the owners of Fairview lots facing on that highway to have protected the outlook of their residences had they chosen to do so. In that respect the situation is unlike the Columbia College Case, supra, in which the court gives especial emphasis to the circumstance that the elevated railway was by legislative sanction and accordingly beyond the power of the lot owner to prevent. It seems quite impossible to say here that the establishment of business enterprises along Mt. Ephraim Pike opposite Fairview was not within the reasonable contemplation of the parties to this covenant. Indeed, it may be doubted whether the underlying principles of the most extreme cases denying relief because of changed conditions without fault of complainant embrace legitimate businesses established in unrestricted territory on the opposite side of a highway on which the restricted property may front.
Another important circumstance may be said to exist in this case which should not be overlooked. As already stated, the entire territory of Fairview, except the store section, is embraced in this covenant. Fairview extends along Mt. Ephraim Pike a long distance with a great number of lots and residences facing on that Pike. If defendants' lot is to be released from the equitable obligation of this covenant, all these other lots facing on that Pike, like circumstanced, will in practical effect be released. The defense is indeed predicated upon defendant's purpose to use his lot for business. It follows that the practical effect of throwing open to business this tier of Fairview lots which is adjacent to the Pike will be to establish the next westerly tier of lots in a position adjacent to the newly established business properties, and in *Page 436 
turn release them from the operation of the covenants. That process of encroachment could find no end in a tract so circumstanced.
The evidence discloses some changed conditions on Collings road due to bus lines superseding the trolley, but these may be deemed immaterial. Nor can the claim be sustained to the effect that complainant has by enclosing his front porch denied himself relief.
A decree will be advised pursuant to the prayer of the bill.