The bill in this case was filed to restrain the defendants from violating a restrictive covenant, prohibiting, inter alia, "any building or other erection for the carrying on of any trade or businesss noxious, offensive or dangerous to the neighboring inhabitants." The situation disclosed by the pleadings and affidavits is as follows:
The complainant is the owner of a lot of land situate on the easterly corner of Northfield avenue and Rollinson street, in the town of West Orange, on which is erected a one-family dwelling. The defendants Laidlaw are the owners of a lot of land on the westerly corner of Rollinson street and Northfield avenue, directly opposite the property of the complainant. Both lots were originally part of a large tract of land owned by the heirs of Abbey M. Rollinson. These heirs divided the tract into building lots and from them both complainant and the defendants Laidlaw mediately derived title to their respective properties. Every deed given by the Rollinson heirs for each lot of the tract contained amongst the restrictive covenants the clause above set forth. The defendants Benjamin P. Laidlaw and Christina G. Laidlaw had contracted for the sale of their lot to the defendant Joseph McDonough, Jr., a licensed embalmer and funeral director. Prior to December, 1932, McDonough resided at 535 Valley road, West Orange, and conducted his business at that address. In December, 1932, he moved into the premises owned by the Laidlaws and erected upon the front of the house a sign reading: "Joseph McDonough — Funeral Services." This was the same sign which had been used by him at his former residence.
Complainant fears that McDonough may use the premises as a place for conducting the business of embalming, undertaker and funeral director and as a place for holding funerals. She alleges that the carrying on of such business would be offensive to her and to the neighboring inhabitants and that it would constitute a violation of the restrictive covenant. This allegation contained in her bill and in her affidavit is supported by the affidavits of six persons living in the immediate *Page 320 
vicinity. McDonough says that he does not intend to use the property as a funeral home and that he has not advertised it as such. He admits, however, that from time to time he is called upon to conduct funerals at his home and that he does intend to use his present residence for that purpose when asked to do so.
Complainant says that these properties are located in a residential neighborhood; while McDonough claims that the neighborhood is not strictly residential, and calls attention to the location in the rear of the premises occupied by him of the West Orange High School and athletic field; to the location at the corner of Rollinson street and Swaine place, one block south of complainant's property, of a building used by one Kearny for the storage of automobiles; and to the fact that there are a number of two-family houses in the neighborhood (the deeds contain a restriction against the erection of other than one-family houses). The defendants deny that there is any general restrictive scheme which would prevent McDonough from carrying on his occupation in his present location and claim that the words of the covenant do not prohibit him from carrying on his occupation. That there is a general restrictive scheme covering this neighborhood is clear. It is to be noted that there have been no violations which have in any substantial way affected the property of the complainant. This general adherence to the covenants is amply indicated by the affidavits presented by the defendants as well as by those submitted by the complainant. The few violations of the restrictions referred to by the defendants indicate a general adherence to the original plan rather than an abandonment thereof. Barton v. Slifer, 72 N.J. Eq. 812;Dettsloff v. Hockstetter, 96 N.J. Eq. 391; Polhemus v.DeLisle, 98 N.J. Eq. 256.
It is contended that the covenants have no application to McDonough because his occupation is a profession and not a trade or business; and the defendant refers to the special skill, education and training required of a funeral director.
The word "trade" was defined by Judge Story in "The Nymph"Case, 18 Fed. Cas. 506, in this language: *Page 321 
"The word is often, and, indeed, generally used as equivalent to occupation, employment or business whether manual or mercantile. Whenever any occupation, employment or business is carried on for the purpose of profit or gain or livelihood, not in the liberal arts or learned professions, it is constantly called a trade."
Undertaking, as commonly carried on, is not a profession; it is a business or trade. O'Reilly v. Erlanger, 108 App. Div.
(N.Y.) 318; Bond v. Cook, 237 App. Div. (N.Y.) 229.
The Licensing act (P.L. 1927 ch. 156) is entitled "An act to regulate the business of dealing with dead human bodies, including their preparation, preservation and disposal, and the business of funeral directing, embalming and undertaking and to license those engaged in the business of funeral directing, undertaking, embalming and the preparation and preservation and disposal of dead human bodies and to punish persons violating the provisions thereof." The expressions "business of embalming" and "business of funeral director" are used throughout the act, clearly indicating that in the mind of the legislature the occupation in question is a business rather than a profession.
The words "trade" and "business" as used in the restrictive covenant clearly include within their meaning the occupation pursued by McDonough and if his occupation is "offensive to the neighboring inhabitants" it comes within the prohibition.Polhemus v. DeLisle, supra.
No claim is made that McDonough's business is a nuisance perse and the injunction is not sought upon that basis. The question here is whether or not the words of the restrictive covenant prohibit the defendant McDonough from conducting his business in the premises described.
Westcott v. Middleton, 43 N.J. Eq. 478, is apparently the only reported case in this state in which injunctive relief was sought against the maintenance of an undertaking establishment. That case held that such a business was not a nuisance per se.
The complainant did not satisfy the court that the business was so conducted as to be a nuisance. No restrictive covenants were involved and the location was not in a purely *Page 322 
residential neighborhood. The court referred to the fact that the business was conducted in a populous part of the city, and complainant used a portion of his premises for business purposes. It also appeared that the defendant had been conducting his business for eleven years in its then present location without objection and that the complainant was of a super-sensitive temperament. Speaking on this latter point the vice-chancellor said, at page 484:
"Plainly, the circumstances are special and most unsafe to found any general rule of law upon."
An occupation may not be a nuisance per se and still be offensive to the neighboring inhabitants. The covenant does not restrain only those trades or businesses which are nuisances perse. If it were intended simply to restrain any trade or businessper se a nuisance or carried on in such a way as to make it a nuisance, then it was wholly unnecessary. Hence this case is not controlled by the rule as to nuisances, but by the meaning and effect of the language used in the restrictive covenant.
Anything that is hurtful, disturbs happiness, impairs rights, or prevents the enjoyment of them is injurious and if it causes displeasure, gives pain or unpleasant sensations it is offensive.6 Words and Phrases (1st ser.) 4198.
In Rowland v. Miller, 139 N.Y. 93, it was held that the establishment of the business of an undertaker and embalmer violated a restrictive covenant against the carrying on of "any trade or business which shall be injurious or offensive to the neighboring inhabitants." That establishment did, however, include a morgue and a place for performing autopsies and was, therefore, capable of producing even more offense to the neighboring inhabitants than could the McDonough business.
The residents of the neighborhood who have submitted affidavits in support of the complainant say that the conduct of McDonough's business in its present location will be offensive to them. That such a use may adversely affect persons residing in the immediate neighborhood in the comfortable enjoyment of their homes and lessen the value thereof for *Page 323 
residential purposes, is an inevitable inference from common knowledge of the nature and the minds of men. The injury is not one which is felt only by a hyper-sensitive person. The normal man is affected by the consciousness of death. It is not peculiar to the person of overwrought nerves or delicate taste to feel a physical reaction in the presence of death and consequently to one of normal sensibilities the symbols of death, which are the stock in trade of the undertaker, the presence of dead bodies, the pall, the hearse, the casket, the coming and going of funeral processions, must have a depressing and disturbing effect inconsistent with the usual atmosphere of the home. Such factors are entitled to consideration equally with those which have a more direct and tangible physical effect; for it is no longer doubted that physical disturbances often result from conditions which constantly depress and disturb the mind. Osborn v.Shreveport, 143 La. 832; Lewis v. Mayor, c., of Baltimore
(Md. — 1933), 164 Atl. Rep. 220; Saier v. Joy, 198 Mich. 295; Arthur v. Virkler (1932), 258 N.Y. Supp. 886;Densmore v. Evergreen Camp, 61 Wn. 230; Cunningham v.Miller, 178 Wis. 220; 189 N.W. Rep. 531.
Defendants assert that no facts are shown from which the urgent necessity or threatened damage of an irreparable character required for the issuance of an injunction at this time may be inferred. However, it is stated in McDonough's affidavit and also in the brief that he intends to and will use the premises as a place for conducting funerals whenever requested to do so. That in itself suffices for the threatened breach of the covenant. That the breach of the covenant will result in irreparable damage to the neighboring residents is manifest from the foregoing discussion.
There is no substantial dispute as to the essential facts of this case. There can be no doubt as to the meaning of the word "offensive" nor that the conduct of an undertaker's business in this location would be offensive to neighboring residents of normal, reasonable temperament.
Defendant McDonough alleges that since by the terms of the covenant it cannot be enforced against a person not the *Page 324 
owner of the property, no relief can be had against him. He is, however, in possession of the property under a contract of purchase, and the covenant will be enforced against him as the equitable owner.
I will advise an order in accordance with these conclusions.