STATE OF IOWA, Appellant, v. WINNESHIEK CO-OPERATIVE BURIAL ASSOCIATION, Appellee.

No. 46830.

MAY 7, 1946.

John M. Rankin, Attorney General, and Edward S. White, Jr., Special Assistant Attorney General, for appellant.

Connolly, O'Malley & McNutt, of Des Moines, and E. P. Shea, of Decorah, for appellee.

MULRONEY, J.— The attorney general's petition in quo warranto alleged that the defendant, the Winneshiek Co-operative Burial Association, was a co-operative corporation, created under the provisions of chapter 390, Code of 1927, for the purpose of engaging in the profession of embalming, and that since its incorporation on July 8, 1930, it has been engaged in the practice of embalming and that said practice "is against public policy and in violation of law."

The answer, in seven divisions, set up numerous defenses, chief of which was a denial by the defendant that it was practicing embalming and an allegation that it conducted its business by a lease arrangement with a licensed embalmer.

At the conclusion of the trial the district court made findings of fact wherein it found that the yearly lease agreements were entered into for 1943, 1944, and 1945, and the court in its conclusions of law held:

"That the plaintiff has failed to prove, by a preponderance of the evidence, that the said defendant practiced embalming in violation of the laws of the State of Iowa. That the plaintiff has failed to prove, by a preponderance of the evidence, that the defendant was or is practicing a profession for the practice of which a license is required by law."

I. Article II of defendant's articles of incorporation provides:

"The purpose of this association shall be to furnish complete funeral service upon the co-operative plan. * * * to purchase and supply to its members, caskets, .burial vaults and other burial supplies; to own and operate a hearse; to hire and engage an undertaker to embalm bodies and conduct-funerals; and to do any and all other things necessary or desirable in connection with funerals for its members and their families as permitted by law * * * ."

The record shows that the defendant did furnish the funeral service for its members, and possibly some that were not members, by hiring licensed embalmers at a monthly salary until 1943. After 1943 the yearly lease with the licensed embalmer supplanted the hiring arrangement. There is no need to review the testimony with respect to the manner in which the defendant carried on its business before 1943, when it hired embalmers, and after 1943 when it executed leases with embalmers. The lease arrangement was a mere subterfuge. After 1943 the company was still engaged in the business of furnishing funeral service by engaging "an undertaker to embalm bodies and conduct funerals" within its corporate purpose. State v. Kindy Optical Co., 216 Iowa 1157; 248 N. W. 332. The real issue in the case, as we see it, is whether the practice or business of embalming by a corporation that acts through licensed embalmers is prohibited by law or contrary to public policy.

II. It is admitted that defendant was organized under chapter 390, Code of 1927. Section 8486 of this chapter provides for the organization of co-operatives for the purpose of "conducting any agricultural, live stock, horticultural, dairy, mercantile, mining, manufacturing, or mechanical business * * * ." The attorney general argues that defendant could not be legally incorporated for the purpose of a burial association under the above statute. The defendant answers that it is a mercantile association and therefore within the provisions of the above statute. The record shows that its articles, plainly stating the purpose of the corporation, and plainly stating that its formation was under the provisions of chapter 390, were sent to the secretary of state's office on July 8, 1930, and the certificate was issued. Moreover, the legislature in 1937, by an amendment to section 2585-c1, Code of 1935, legislated with respect to "cooperative burial associations." See chapter 106, section 1, Acts of the Forty-seventh General Assembly. It would seem that the corporate creature's legitimate birth was recognized by its legislative and administrative parents. A mercantile business means the business of buying and selling articles of merchandise. 27 Words & Phrases, Perm. Ed., 61, 62. Some authority for the conclusion that an undertaking business is a mercantile business is contained in our holding that funeral directors are liable for sales tax. See Kistner v. Iowa State Board of Assessment and Review, 225 Iowa 404, 414, 280 N. W. 587, 592, where we stated:

"* * * while it is true that the undertaker renders service, and valuable service, for which he is entitled to adequate compensation, he is also engaged in the sale of tangible personal property—the casket, the vault and other necessary equipment. He does not consume the articles as a plumber or welder would consume gas or electricity in a torch or welding device. He is not a processor. He does not use the articles in the manufacture of other articles. He is not changing their form. He transfers the very articles to the purchaser. He purchased the articles for re-sale and did re-sell them to the user."

Under the record we are not disposed to hold that the

defendant was improperly organized under chapter 390, Code of 1927.

III. The attorney general argues that defendant "is unlawfully practicing the profession of embalming in that it neither holds nor can secure the required license for the practice of that profession, and its practice of the profession of embalming is against public policy and in violation of law." The attorney general cites section 2439, Code of 1939, prohibiting persons from engaging "in the practice of * * * embalming * * *" without a license, and section 2585.01 defining the practice of embalming. The argument is that the corporate activity is within the definition of "embalming" and a corporation cannot "take training and pass examinations preparatory to securing a license * *. * and a corporation cannot practice a licensed profession." We posed the question in State v. Fremont Co-operative Burial Assn., 222 Iowa 949, 270 N. W. 320, but we did not answer it for the answer was not necessary for the decision. We have stated that the formation of a co-operative burial association was within the contemplation of the general statutes authorizing co-operatives. It would be inconsistent to hold that a co-operative burial association was contemplated by chapter 390, governing the formation of co-operatives, but such a co-operative could not carry out the purpose for which it was organized because embalming, as a licensed profession under chapter 124.1, Code of 1939, cannot be performed by a corporation.

There is no general rule that a corporation cannot own a business the conduct of which requires licensed operators. The rule is that a corporation cannot in general practice one of the learned professions. 19 C. J. S. 400, section 956. The rule is thus stated in 13 Am. Jur. 838, section 837:

"While a corporation is in some sense a person and for many purposes is so considered, yet, as regards the learned professions which can only be practiced by persons who have received a license to do so after an examination as to their knowledge of the subject, it is recognized that a corporation cannot be licensed to practice such a profession."

We gave expression to this rule in State v. Bailey Dental

Co., 211 Iowa 781, 234 N. W. 260, and in State v. Kindy Optical Co., supra, when we held a corporation could not practice dentistry or optometry. See, also, State ex rel. Standard Optical Co. v. Superior Court for Chelan County, 17 Wash. 2d 323, 135 P. 2d 839; Kendall v. Beiling, 295 Ky. 782, 175 S. W. 2d 489. In Cummings v. Pennsylvania Fire Ins. Co., 153 Iowa 579, 587, 134 N. W. 79, 82, 37 L. R. A., N. S., 1169, Ann. Cas. 1913E, 235, we quoted the dictionary definition of "profession" in part as follows:

" 'Formerly theology, law and medicine were specifically known as the professions; but, as the applications of science and learning are extended to other departments of affairs, other vocations also receive the name. The word implies professed attainments in special knowledge, as distinguished from mere skill; a practical dealing with affairs, as distinguished from mere study or investigation; and an application of such knowledge to uses for others as a vocation, as distinguished from its pursuit for one's own purposes.' "

The rule with respect to a trade or business is thus stated in 13 Am. Jur. 839, section 838:

"In cases of trades and businesses for which a license is required in order to authorize a person to engage therein, it is generally held that a corporation may be so licensed * * *."

See William Messer Co. v. Rothstein, 129 App. Div. 215, 113 N. Y. Supp. 772, holding that a plumbing business can be carried on by a corporation employing licensed plumbers. The test, then, is whether, under the licensing statute, the engagement licensed is the engagement in the practice of a profession or the engagement in a trade or business. State v. Superior Court for Chelan County, supra. The statute defining the "practice of embalming" (section 2585.01) includes, in part:

"Any person, who prepares dead human bodies for burial, cremation or other final disposition; or who, in connection with the disposition or sale of any casket, vault or other burial receptacle, shall furnish any embalming or funeral service, directly or indirectly, by himself, or in conjunction with another; or

who publicly professes to be an embalmer, funeral director, mortician * * *.''

Funeral director and mortician certainly suggest a business rather than one of the learned professions. In Building Commissioner of Brookline v. McManus, 263 Mass. 270, 273, 160 N. E. 887, the Supreme Judicial Court of Massachusetts stated:

''Undertaking, as commonly carried on, is not a profession; it is a business or occupation. It has been held that the working tools of an undertaker are not professional instruments. O'Reilly v. Erlanger, 108 App. Div. 318 (N. Y.) [95 N. Y. Supp. 760]. See, also, Rowland v. Miller, 139 N. Y. 93 [34 N. E. 765, 22 L. R. A. 182]. An undertaker is required to be licensed by a board of health under G. L. c. 114, §49. An embalmer is also required to be registered under G. L. c. 112, §§82, 87. The fact that before a person can lawfully engage in the business of embalming he is required to submit to examination and be registered does not change business into something else any more than the occupations of others are changed by the requirement that they be licensed. See Wyeth v. Cambridge Board of Health, 200 Mass. 474 [86 N. E. 925, 23 L. R. A., N. S., 147, 128 Am. St. Rep. 439].''

There is no specific statute prohibiting corporations from engaging in the funeral-director or embalming business. Chapter 124.1 deals with the license requirements of embalmers, but by legislating with respect to a ''person, firm, or legally established funeral home'' (section 2585.01) it would seem the legislature contemplated ownership of the home by a corporation which carried on its business by licensed embalmers.

The interpretation statute 2585.02 provides that the act shall not be construed to include the following classes of persons: ''Manufacturers, wholesalers and jobbers of caskets, vaults or other burial receptacles not engaged in the other functions of embalming or furnishing of funeral services * * *.'' In other words, the act would include such ''classes of persons'' as manufacturers, wholesalers, and jobbers of caskets who do engage in embalming and funeral activities. That the legislature intended to include corporate manufacturers, whole-

salers, and jobbers is a compelling, realistic interpretation, from the common knowledge that corporations so generally engage in manufacturing, wholesaling, and jobbing enterprises.

It is our conclusion that the practice of embalming as defined and licensed in chapter 124.1, Code of 1939, is the engagement of a business, and consequently a corporation with licensed operators can carry on the business. We see no legislative intent in the statutes to prevent the conduct of such business by a corporation.

IV. As long as the corporation performs embalming service by licensed embalmers we cannot see how the activities of the corporation will contravene the public policy of this state. In Liggett Co. v. Baldridge, 278 U. S. 105, 113, 49 S. Ct. 57, 59, 73 L. Ed. 204, the Supreme Court of the United States had before it the constitutionality of a Pennsylvania statute requiring the stock in corporations owning drugstores to be owned by licensed pharmacists. The court held the statute unconstitutional and, in response to the argument that it was a legitimate public-health measure, stated:

"It deals in terms only with *ownership*. * * * mere stock ownership in a corporation, owning and operating a drug store, can have no real or substantial relation to the public health * * *."

V. The attorney general's brief contains the statement that co-operative burial associations are specifically prohibited from receiving licenses under the provisions of subsection 2 of section 2585.01 of the 1939 Code of Iowa. The point is not argued but the statement refers no doubt to the last part of the section, which was added to the same section of the 1935 Code by chapter 106, section 1, Acts of the Forty-seventh General Assembly, which is as follows:

"It is further provided that nothing in the provisions of this chapter shall apply to any person, firm, or legally established funeral home other than cooperative burial associations, except that each such legally established funeral home shall comply with the provisions of this chapter as to state control, licenses, and license fees, engaged in the undertaking business on July 4, 1935."

564

We do not read this as a specific prohibition that bars co-operative burial associations from engaging in embalming business through licensed embalmers. The meaning of the entire sentence is somewhat obscure. As we analyze the sentence it expresses the thought that the provisions of the act, except as to state control, licenses, and license fees are not to apply to persons, firms, and legally established funeral homes engaged in the undertaking business on July 4, 1935—and legally established funeral homes shall not include co-operative burial associations. This would mean, then, that the provisions of the act would apply to co-operative burial associations.

From the foregoing it will be seen that, while we are not in accord with some of the trial court's conclusions, we are in accord with its decision dismissing the attorney general's petition, and therefore the decision is affirmed.—Affirmed.

BLISS, C. J., and OLIVER, HALE, MILLER, GARFIELD, SMITH, and MANTZ, JJ., concur.

WENNERSTRUM, J., not sitting.