NET MIDWEST, INC., Appellant,

v.

The STATE HYGIENIC LABORATORY,
The State University of Iowa, and the
State Board of Regents, Appellees.

No. 93–1290.

Supreme Court of Iowa.

Jan. 18, 1995.

Rehearing Denied Feb. 22, 1995.

John F. Lorentzen of Nyemaster, Goode,
McLaughlin, Voigts, West, Hansell &
O'Brien, P.C., Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., and Stephen Moline and Charles S. Lavorato, Asst. Attys. Gen., for appellees.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

This is an appeal by a private laboratory from a district court's ruling that the services performed by the State Hygienic Laboratory are exempt from Iowa's noncompetition-by-government act, Iowa Code § 23A.2 (1989). We concur in the district court's interpretation and application of the pertinent statutes and affirm.

## I. *Background Facts and Proceedings.*

Plaintiff, Net Midwest, Inc. (Net), is an Illinois corporation which operates one of its laboratories in Cedar Falls, Iowa. It provides environmental analytical testing services to individuals, private businesses, and governmental agencies. Defendant State Hygienic Laboratory (SHL) operates under the authority of Iowa Code section 263.7 as a permanent part of the University of Iowa, offering laboratory analytical services to government and private entities in the areas of human disease, environmental quality, and public health. SHL is authorized by statute to provide services to the Iowa Department of Public Health and, for a fee, performs laboratory analyses requested by any state institution, citizen, school, municipality, or local board of health. Iowa Code § 263.8.

The overlap in the types of testing performed by SHL and Net has resulted in competition between the two labs. In January 1989, Net made a written complaint to the University of Iowa claiming that the sale of laboratory testing services by SHL violated Iowa Code section 23A.2, the Iowa noncompetition act.[1] Dissatisfied with the University's response, Net appealed to the board

of regents. *See* 681 Iowa Admin.Code 9.4(8) (describing procedure for resolving complaints involving competition by regents institutions with private enterprise). The regents denied Net's appeal. Net then commenced an action in equity in the district court seeking injunctive relief against SHL for violation of the noncompetition act.

Following trial, the district court held that SHL's testing services fall within Iowa Code section 23A.2(10)(k)(9), an exemption from the noncompetition act for "on-campus activities of an institution or a school under the control of the state board of regents" relating to "[g]oods, products, or professional services which are produced, created, or sold incidental to the schools' teaching, research, and extension missions."

## II. *Issues on Appeal.*

On appeal Net advances three grounds for reversal. It claims the court erred in applying section 23A.2(10)(k)(9) because the work of SHL (1) does not constitute a professional service, (2) is not incidental to the school's extension mission, and (3) is not performed on-campus.

■ Because Net's petition was tried in. equity, *see* Iowa Code § 23A.4, our review is de novo. Iowa R.App.P. 4. We shall consider Net's arguments in turn.

■ A. *Professional Services.* This court has established two tests by which an occupation may qualify as a "profession." The first measures the degree of preparation necessary. Qualification as a "professional" requires more than mere training. An individual must attain special intellectual achievements, such as a liberal arts education or its equivalent, in order to qualify. *Halverson v. Lincoln Commodities, Inc.,* 297 N.W.2d 518, 523 (Iowa 1980); *see also State v. Winneshiek Co-op Burial Ass'n,* 237 Iowa 556, 561, 22 N.W.2d 800, 803 (1946) (profession implies attainment of specialized knowledge "as distinguished from mere skill"). The second

---

1. The act provides, in pertinent part:

 1. A state agency or political subdivision shall not, unless specifically authorized by statute, rule, ordinance, or regulation:

 a. Engage in the manufacturing, processing, sale, offering for sale, rental, leasing, delivery, dispensing, distributing, or advertising of goods or services to the public which are also offered by private enterprise unless such goods or services are for use or consumption exclusively by the state agency or political subdivision.

 Iowa Code § 23A.2(1)(a) (1989).

test concerns the occupation's purpose. Public service is the hallmark of a profession. While it may also provide a person with a livelihood, a profession has as its primary purpose the application of knowledge to the service of others. *Halverson*, 297 N.W.2d at 523; *Winneshiek*, 237 Iowa at 561, 22 N.W.2d at 803.

■ As to the first test of professionalism, the record reflects that SHL employees possess the requisite level of education and preparation. To obtain employment as an entry-level chemist at SHL, a person must ordinarily hold a college degree in chemistry or a related field of science. All entry-level analysts work under direct supervision. Rising to the rank of supervisor requires years of experience as a chemist and, most often, possession of a graduate degree. On the question of the occupation's purpose, SHL services promote the public good by identifying and curtailing hazardous threats in the areas of communicable diseases, environmental quality, and public health. In particular, SHL analysis enables clients to meet regulatory requirements that enhance environmental protection. Most of SHL's customers do not have the expertise to perform these services on their own.

Based on these facts, we agree with the district court's conclusion that the services provided by SHL are "professional services" within the meaning of Iowa Code section 23A.2(10)(k)(9).

■ B. *Extension Mission.* Net next challenges the district court's determination that SHL's services fall within the University of Iowa's extension mission. It claims the University's extension mission relates only to its teaching and research services and thus does not include SHL. We believe, however, that the ordinary use of the term "extension mission" contemplates the kind of services provided by SHL.

It is true that chapter 23A does not specifically define "extension mission." However, we may gain insight into the term's meaning by "reference to prior judicial decisions, similar statutes, the dictionary, or common generally accepted usage." *State v. Williams*, 315 N.W.2d 45, 49 (Iowa 1982). Also, when more than one statute is pertinent to the inquiry, we are obliged to consider the statutes together in an attempt to harmonize them. *American Asbestos Training Ctr. Ltd. v. Eastern Iowa Community College*, 463 N.W.2d 56, 58 (Iowa 1990). Through these means, we give effect to legislative intent. *Id.; see Iowa Fed'n of Labor v. Iowa Dep't of Job Serv.*, 427 N.W.2d 443, 445 (Iowa 1988) (discerning legislative intent is ultimate goal of statutory interpretation).

Used in the educational context, a common definition of extension is:

> [T]he making available of the educational opportunities or other resources of an institution by special programs or methods (as evening classes in a university, off-campus instruction centers, correspondence courses, library branches or bookmobiles) to persons otherwise unable to take advantage of such opportunities and resources; *also:* a service or system by which such opportunities or resources are made available.

Webster's Third New International Dictionary 805 (1993). SHL's work falls squarely within this definition. SHL makes available an array of public health and environmental laboratory resources to citizens who would otherwise have no access to these services.

Further support for SHL's role as a University extension service is found in the University's mission statement, which empowers the University to engage in "teaching, research, and appropriate extension, health and other public services...." 618 Iowa Admin.Code 12.1(1). Use of the term "extension services" read in conjunction with "health and other public services" suggests that the services are related. *See Smith v. City of Fort Dodge*, 160 N.W.2d 492, 497 (Iowa 1968) (noting rule of statutory construction which interprets words by reference to other words associated with them). The SHL provides "health and other public services." Its mission therefore fits the term "extension" as it is used in section 23A.2(10)(k)(9).

Finally, we note that the exemption for extension services found in section 23A.2(10)(k)(9) is immediately preceded by an exemption from chapter 23A for services

provided by the University of Iowa Hospitals and Clinics and is immediately followed by an exemption for services provided by the Iowa State University College of Veterinary Medicine. As already noted, SHL's services complement those offered by these University programs in that they furnish scientific expertise promoting health and environmental quality. This further supports the district court's conclusion that SHL's activities fall within the subparagraph (k)(9) "extension services" exemption.

 C. *On-campus.* The question remains whether SHL performs its work "on-campus" as required by section 23A.2(10)(k)(9). It has been generally held that the term "on-campus" is not restricted to a site which is contiguous with all the buildings and grounds of a university. *See East v. King County,* 22 Wash.App. 247, 589 P.2d 805, 808–10 (1978). A site may be some distance from a school's main setting and still be considered "on-campus." *Id.*

We note that activities traditionally considered part of an extension service—for example, library branches, correspondence courses, or outlying instruction centers—are often more removed from a school's main setting than is SHL, which has its central laboratory located at the University of Iowa. Moreover, while the work performed by SHL—such as soil sampling—may be conducted in the field, its primary endeavor— laboratory analysis—is conducted "on-campus." And, finally, the product actually paid for by SHL's clients is the written test result prepared at the laboratory site at the University of Iowa. Therefore, we agree with the district court's finding that SHL's activities are performed on-campus.

Upon review of the lower court's ruling and record, we agree that SHL's services fall within section 23A.2(10)(k)(9)'s exemption to the noncompetition-by-government act. We thus affirm the decision of the district court.

**AFFIRMED.**