Shibe's Case (Hadley's Appeal).

Argued October 26, 1934.

Before Trex-
ler, P. J., Keller, Cunningham, Baldrige, Stadtfeld,
Parker and James, JJ.

*John Robert Jones* and *Franklin E. Barr*, Assistant
District Attorney, with them *Charles F. Kelley*, Dis-
trict Attorney, *J. Louis Breitinger* and *Graham C.
Woodward*, for appellant.

*Charles G. Gartling*, for appellees.

Opinion by Stadtfeld, J., March 1, 1935:

March 9, 1934, John D. Shibe and C. McGillicuddy
presented an application to the county treasurer of
Philadelphia County for a license as a retailer under
the provisions of the Act of May 3, 1933, P. L. 252,
known as the "Beverage License Law," as amended
by the Act of December 20, 1933, P. L. 75, known as
the "Malt Liquor License Law." The particular
place for which the applicants desired the license is a
baseball park known as Greater Shibe Park, situate
at 21st Street and Lehigh Avenue, in the 38th ward
of the City of Philadelphia, "consisting of a three-
story brick building" wherein have been conducted,
as set forth in their license application, during the
preceding five years, "baseball and football contests;
sale of food and drinks in the course of said contests."

The owner of the premises is the American Baseball Club of Philadelphia, a domestic corporation of the second class, organized for profit. Such corporation-owner leased to the applicants the portion of the premises described. It was alleged in the application that the premises are and were used for the conduct of baseball games since 1909.

Attached to the petition is a plan which, together with a letter of counsel for the applicants to the county treasurer, dated April 13, 1934, establish the fact that the particular portion where the sales are to be made is on the third floor or tier in the rear of the upper left field pavilion erected in the baseball park. The proper bond was filed and license fee tendered with the application as required by law.

The record shows that the space applied for approximates 6181 feet in size, is 81 feet wide by 99 feet in depth by 122 feet, and contains 12 tables and 48 chairs, in addition to any chairs at lunch counters, accommodating over 48 persons at one time, and in no way interferes with the passage of patrons to the tier of seats in said left field portion, occupied by spectators at the ball games conducted by the American Baseball Club. The space is open and visible at all times to those inside of said Shibe Park upon those days and hours of the day when the baseball games are conducted.

The application was refused by the county treasurer on April 24, 1934 for the reasons, inter alia, (a) that the applicants do not conduct a reputable bona fide eating place in accordance with the Act of May 3, 1933, as amended December 20, 1933, and (b) that the Act of July 9, 1881, P. L. 162, PS Title 47, Par. 181, prohibited the granting of a license to a place of amusement. Other reasons are referred to in the briefs, but it is not necessary to consider the same, as the last one stated is the controlling one in this appeal.

On April 25, 1934, appellees filed an appeal to the court of quarter sessions, which appeal was allowed and a hearing set for May 26, 1934. On that date, an answer was filed to the petition for the appeal, and, after hearing, McDevitt, P. J., who heard the case, on June 4, 1934, filed his opinion and made an order sustaining the appeal and directing the county treasurer to issue the license applied for. Exceptions were taken to the court's order and subsequently an appeal was taken to this court from the decree of the lower court. The appeal was made a supersedeas.

Appellant assigns as errors the conclusion of the lower court that the Act of 1881, supra, is inconsistent with the Act of May 3, 1933, as amended, and has therefore been repealed by implication. The remaining assignments relate to the findings of the lower court as to the proposed compliance of the application with certain of the provisions of the Act of 1933.

There are only two legal questions involved in the present appeal: First: The limitations on this court to review the proceedings in the court below, and, Second: Whether the Act of July 9, 1881, P. L. 162, PS 47, Sec. 181, is still in force and effect, in view of the Act of May 3, 1933, as amended by the Act of December 20, 1933.

The Act of May 3, 1933, as amended by the Act of December 20, 1933, Sec. 7, provides that there shall be no appeal. The jurisdiction of this court therefore is that which we have on certiorari, and is restricted to a review of the regularity of the record and, since the Act of April 18, 1919, P. L. 72, to an examination of the evidence to test the right of the court to make the order complained of: Sterrett v. MacLean, 293 Pa. 557, 560, 561, 143 A. 189; Revocation of Mark's License, 115 Pa. Superior Ct. 256, 176 A. 254.

The sole question then before us is whether the

lower court erred in holding that the Act of 1881 was repealed, and that the fact set forth in the petition for a license that the premises on which the proposed business is to be conducted is connected with or part of the premises used as a place of amusement, is no bar to the granting of a license. The decision of this question goes to the very jurisdiction of the court. If the act be in force then there is no authority in the lower court to grant the license.

The Act of July 9, 1881, P. L. 162, provides: "That no license for the sale of vinous, spirituous, malt or brewed liquors or any admixtures thereof, in any quantity, shall be granted to the proprietors, lessees, keepers or managers of any theaters, circus, museum or other place of amusement, nor shall any house be licensed for the sale of such liquors, or any of them, or any admixtures thereof, which has passage or communication to or with any theater, circus, museum or other place of amusement; and any license granted contrary to this act shall be null and void."

In Commonwealth ex rel. v. American Baseball Club, 290 Pa. 136, 146, 138 A. 497, the Supreme Court expressly said that the exhibition conducted upon the grounds here in question, and viewed from the pavilion upon which this business is proposed to be conducted, differs not at all from a circus or a theatrical performance, such court saying that there was no difference between playing professional baseball and conducting a circus or running a theatre. For a full and comprehensive discussion of the term "places of amusement" see Eckman's Application, 27 D. R. 331; Hastings and Ward's Ridge Ave. Concert Garden Case, 15 Phila. Reports 420.

The premises upon which the privileges of the license are to be exercised are a place of amusement, and the place in which the malt liquors are to be sold is in a passageway in such place of amusement.

The lower court held that the Act of 1881 was repealed by implication "by either the Act of March 27, 1923, P. L. 34, the Act of May 3, 1933, or the Act of Nov. 29, 1933."

As stated by this court in the recent case of App. of Visitors to the Allegheny County Home, 109 Pa. Superior Ct. 519, 167 A. 632: "We do not question the principle that a subsequent statute revising the whole subject of a former statute, and evidently intended as a substitute for it, although it contains no express words to that effect, operates to repeal the former statute, as pointed out in Fort Pitt B. & L. Assn. v. Model Plan B. & L. Assn., 159 Pa. 308. *This rule of law applies only when the subsequent statute provides a complete and comprehensive method for doing what was provided for in the prior statute, and the two methods are exclusive and cannot be harmonized.*" (Italics supplied.)

In determining the legislative intent, the court's attention should be directed to the preamble of the Beverage License Law (Act of May 3, 1933, P. L. 252, PS Title 47, Par. 84, Supplement), which indicated its purpose, inter alia, as "to regulate and restrain the traffic in malt, brewed and vinous and fruit juice beverages as herein defined, etc."

Section 6 of the Act of May 3, 1933, provides, subject to the restrictions thereinafter provided, for licenses being granted "to a person who conducts a reputable hotel, or incorporated club, or a reputable bona fide eating place where food is regularly and customarily prepared and sold."

Prior to adoption of the 18th Amendment, the general Act of Assembly in Pennsylvania that regulated the licensing of the sale and distribution of malt and brewed liquors, etc., was the Act of May 13, 1887, P. L. 108, known as the Brooks Law of 1887, and in enforcing that law, the Act of July 9, 1881 was held to be in effect and barred the granting of a license

to theaters, circuses and other places of amusement. This Act of May 13, 1887, was expressly repealed by the Snyder-Armstrong Act of March 27, 1923, P. L. 34, PS Title 47, Par. 1, etc., after the adoption of the 18th Amendment. When Congress legalized 3.2 beer, the Beverage Law of May 3, 1933, P. L. 252, PS Title 47, Par. 84, Supplement, was enacted and section 33 expressly repealed the Snyder-Armstrong Act of 1923 and also repealed "all other acts and parts of acts, general, local and special, *inconsistent*" therewith. When the 18th Amendment was repealed, the Liquor Control Act was enacted on November 29, 1933, and this Act also expressly repealed the Snyder-Armstrong Act, as well as all other *inconsistent* acts.

It will be noted that section 33 of the Act of May 3, 1933, expressly repeals the Act of July 15, 1897, P. L. 297, PS Title 47 Par. 461, the Act of July 30, 1897, P. L. 464, PS Title 47, Par. 341; the Act of March 27, 1923, P. L. 34, PS Title 47, Par. 1; the Act of Feb. 19, 1926, P. L. 16, PS Title 47, Par. 121, and *all other acts and parts of acts general, local and special inconsistent with this Act*.

The purpose of the Act of 1933, was, as its title states, "to regulate and restrain the traffic in malt, brewed, and vinous and fruit juice beverages"; not to promote their sale. Its enactment was an exercise of the police power of the State. The Act does not authorize the issuance of a license for the sale of such liquors independent of and disconnected with the particular business of the defined kind of hotel, incorporated club and eating place. Nowhere in this Act is authority to be found for the issuance of a license to any other than those who conduct the specific kind of business defined in Section 6.

When we turn to the Act of July 9, 1881, P. L. 162, we find that this earlier statute and the Acts of 1933 are in harmony. The Act of 1881 was a restraint upon

the liquor traffic. It prohibited the granting of a license to certain persons in certain businesses, namely, places of amusement and to premises which had a passage or communication to or with a place of amusement. It too was enacted in the exercise of the police power of the State and had for its purpose the public good by the restraint of this business.

It is manifest, therefore, that the purpose of the Act of 1881 and the purpose of the Acts of 1933 are one; that they are in harmony; that they are not two methods which are exclusive, one from the other.

Had the legislature intended to repeal the Act of 1881, it is reasonable to conclude that it would have included in its repealer, as embraced in Section 33 of the Act of 1933, the express repeal of the Act of 1881. Likewise it would have included an express repeal thereof within the provisions of the later Act of December 20, 1933, P. L. 75.

We believe that the Act of 1881 and the Acts of 1933 are in harmony with each other. We believe that they were all intended "to restrain and regulate" the sale of liquors and that the Act of 1881 has not been repealed.

To hold otherwise would open the door to the granting of licenses to every theater, moving picture show, skating rink, stadium, baseball park, and other place of amusement, which undertook to operate a so-called "eating place" in connection therewith. Only language which would compel an inescapable conclusion of such construction, would sanction such view.

In this view of the case we are not required to decide whether the evidence will support a finding that the place for which the license is asked is a "bona fide eating place where food is *regularly and customarily* prepared and sold."

The assignments of error are sustained and the order of the lower court is reversed at costs of appellee.