### Bailor's License

*William Morrow*, for appellant.

*Harry Simmons*, Deputy Attorney General, for Pennsylvania Liquor Control Board.

RICE, P. J., October 9, 1941.—This proceeding is an appeal by John W. Bailor from the refusal of the Pennsylvania Liquor Control Board, hereinafter called the board, to grant him a retail dispenser eating place li-

cense for premises in Tuscarora Township, Juniata County, under the provisions of the Beverage License Law of June 16, 1937, P. L. 1827. The petition of appellant was presented and filed July 15, 1941, when the court fixed August 12, 1941, as the time for a hearing de novo and directed that 10 days' notice in writing be given the board. On the day of the hearing there appeared appellant and his counsel and an attorney of the Department of Justice, representing the board, who admitted that proper notice of the hearing had been received.

In Steffen's License, 41 D. & C. 708, this court filed an opinion, holding that the court hears such an appeal de novo, that the burden is on appellant to prove that he has complied with all the requirements of the law and the regulations of the board and is entitled to a license, and that the court may sustain the refusal of a license for reasons different from, or additional to, those assigned by the board.

The application, the notice of the application, the proof of such notice, and the bond are all on forms furnished by the board. We will not take these up at this time to determine whether they comply with the requirements of the law. We find certain defects in them which would justify a dismissal of the application, but we have other reasons for our determination which are sufficient.

Section 2 of the Beverage License Law provides: "(i) 'Eating place' means a premise where food is regularly and customarily prepared and sold having a total area of not less than three hundred square feet, available to the public in one or more rooms other than living quarters, and equipped with tables and chairs accommodating thirty persons at one time." The clause "where food is regularly and customarily prepared and sold" is found in section 6 of the Beverage License Law of May 3, 1933, P. L. 252, and its amending Act of July 18, 1935, P. L. 1217. The Beverage License Law

is an act "to regulate and restrain the traffic in malt, brewed . . . beverages" and is not an act "to promote their sale": Shibe's Case, 117 Pa. Superior Ct. 7, 13. This purpose must be given effect in the interpretation, administration, and application of the act. In speaking of this act the Superior Court, in Revocation of Mark's License, 115 Pa. Superior Ct. 256, 259, 260, said:

"It is enough to note that the act aims (1) to do away with mere drinking places as such and to restrict the sale of malt liquors to places where food is regularly and customarily prepared and sold; . . . (4) to restrict the grant of licenses to reputable citizens of the United States, resident in the place to be licensed . . ."

In Rydewski's Appeal, 121 Pa. Superior Ct. 171, the court below, after hearing evidence as to the equipment of a restaurant, the food on hand, and the weekly receipts from the sale of food and beverages, dismissed an appeal from the refusal of the board to grant a license because the court concluded that the applicant did not operate a restaurant "habitually and principally used for the purpose of providing food for the public," and the Superior Court, among other things, said:

"The sale of liquor is only incidental to the maintenance of a legitimate eating place as described in the Act. . . .

"A careful examination of the testimony, in our opinion, fully justified the action of the lower court, and there was no abuse of discretion in dismissing the appeal."

Section 6 of the Beverage License Law of 1937 provides that ". . . upon being satisfied of the truth of the statements in the application that the premises and the applicant meet all the requirements of this act and the regulations of the board, that the applicant seeks a license for a reputable . . . eating place . . . as defined in this act, the board shall . . . grant and issue . . . a retail dispenser's license."

The testimony shows that the premises sought to be licensed, "Shadeland Inn", were not in existence prior to December 1, 1940, and were not completed at the time, December 21, 1940, when the applicant signed and made oath to his application, or at the time, January 14, 1941, when the first investigation was made by the board, at which latter time no food supplies were on hand, and the conclusion is unavoidable that it was not until after the first investigation was made that the premises could be said to be an eating place. The law contemplates that, when one makes application for such a license, he shall have, fully equipped to serve food and in actual operation serving food, a bona fide legitimate eating place, not merely a building partly or even fully completed where he intends and expects, if he gets a license, to serve food. At the hearing, the applicant testified that he had been operating the premises as a restaurant and serving meals for about seven months, that from three to six cars a day stopped at his place, that he had no record of what he had sold, that, if he were refused a license, he did not know what he would do, and that he had on hand at the time 3 doz. eggs, 10 lbs. of boiled ham, a cured ham, 10 cans of tomato soup, 12 cans of other soups, 8 cans of peas, 1 doz. wieners, 7 or 8 doz. rolls, 5 loaves of bread, 2 lbs. of coffee and sugar, and that he used the food supplies on hand for himself and his family. Over a period of seven months previous to August 12th, when the hearing was held, not more than an average of six cars a day stopped at this place, and the receipts from the food served were evidently so small as not to be worth while to record in a book. The testimony also shows that the State highway route on which the premises abut passes through a sparsely-settled region, that, except on Sundays and holidays, there is little traffic on this route, and that a successful restaurant cannot be conducted at this place without a license. If an eating place, without a license, is not a success from a financial point of view, a bever-

age license is not to be granted to make it pay. Under the facts and circumstances of this case, we are satisfied that the applicant did not have, at the time of his application or at the time the first investigation was made, a legitimate bona fide premise where food was regularly and customarily prepared and sold, that he erected the building for the purpose of getting a license and not primarily for the purpose of conducting an eating place, and that an eating place at this location, without a beverage license, will not be a successful business venture.

Section 6 of the act provides: "In the case of . . . eating places, licenses shall be issued only to reputable persons . . ." and the burden of proof is on the applicant to satisfy the court that he is a reputable person: Rydewski's Appeal, supra. The applicant produced four witnesses to prove his good reputation. The first one said he never heard anything bad about the applicant and never saw him intoxicated and believes the applicant is a fit person, having known the applicant for 18 years and living three miles from him. The second witness said he knew the applicant for 30 years, had heard people talk about him, and his reputation for honesty and sobriety was good. The third witness rents a restaurant from the applicant, located on the same tract of land on which the premises of the applicant are erected, has heard talk about the applicant, and the talk is that applicant is a good fellow. The fourth witness said that the applicant's reputation for honesty and sobriety is good. In opposition to the applicant, a witness said that he was one of the persons who had protested the grant of a license to the applicant, that he had known the applicant for 15 years, that the public talk about the sobriety of the applicant is unfavorable, that the applicant had been a stock dealer and the witness had heard that, when the applicant took live stock to Lancaster by truck, the applicant would become too intoxicated to drive the truck back from Lancaster,

that he had heard this story not long before the hearing and had heard talk of this kind from a number of people, and that he himself had seen the applicant under the influence of liquor, when he smelled the odor of liquor on him and noticed he could not walk firmly. Our own outside information is to the effect that the applicant is addicted to the use of liquor. We are not satisfied that the applicant is a reputable person within the meaning of this act.

On September 9, 1941, the day of the primary election, upon the petition of electors of Tuscarora Township, where the premises of the applicant are located, the question, "Do you favor the granting of malt and brewed beverage retail dispenser licenses for consumption on premises where sold in the Township of Tuscarora County of Juniata, Pa.?", was, in the manner prescribed by section 32 of the Beverage License Law and the Pennsylvania Election Code of June 3, 1937, P. L. 1333, submitted to the electors of the said township, and, according to the records in the office of the county commissioners of the said county, who constitute the county board of elections of the said county, 142 electors of the said township voted "yes" and 220 electors of the said township voted "no."

Section 6 of the Beverage License Law provides: "No retail dispensers license shall be granted in any municipality or township in which the electors shall, as hereinafter provided, have voted against the licensing therein of places where malt or brewed beverages may be sold for consumption on the premises where sold."

Section 32 of the said law states: ". . . if a majority of the persons voting on such question vote 'no', then the board shall thereafter have no power to grant or to renew, upon their expiration, any retail dispenser's licenses in such municipality or township under the provisions of this act."

These provisions of the law are binding on the court as well as on the board. The facts that this primary election took place after the hearing and that no subsequent hearing was held and that no evidence concerning this determination of the electors was submitted to the court do not, in any way, affect the real issue. We consider it the duty of the court to take judicial notice of the results of the submission of the said question to the electors of the said township; their decision becomes the very plain mandate of the law, and a license must be refused to the applicant for this additional reason.

### Decree

And, now, October 9, 1941, after a hearing on the within appeal, the refusal of the Pennsylvania Liquor Control Board to grant a retail dispenser eating place license to John W. Bailor for premises in Tuscarora Township, Juniata County, is hereby sustained, and the appeal of the said John W. Bailor from such refusal is hereby dismissed. Exception allowed.