## Sawdey Liquor License Case.

Argued November 16, 1951. Before DREW, C. J., STERN, STEARNE, BELL, LADNER and CHIDSEY, JJ.

*William W. Knox,* with him *John J. Galbo,* for appellants.

*Samuel J. Roberts,* Special Deputy Attorney General, with him *Horace A. Segelbaum,* Deputy Attorney General and *Robert E. Woodside, Jr.,* Attorney General, for appellee.

OPINION BY MR. JUSTICE LADNER, December 27, 1951:

These appeals come to us from the Superior Court on allocatur.

This case originated in an appeal to the Erie County Quarter Sessions Court from the Pennsylvania Liquor Control Board's refusal to grant the appellants a hotel liquor license for their hotel in Millcreek Township of that county. The Erie County Court affirmed the Board's refusal whereupon the appeal to the Superior Court followed which court affirmed the Quarter Sessions Court.

These are the undisputed facts. In November, 1948, appellants began construction of a hotel on the beach

of Lake Erie. A year later they applied for a hotel liquor license. It is admitted that the structure of the hotel and the applicants themselves met all the requirements of the Board and the conditions of the Liquor Control Act of June 16, 1937, P. L. 1762, 47 P.S. 744-403 as amended. When the construction was begun there was no zoning ordinance in the township restricting the sale or dispensing of intoxicating liquor and the hotel was designed and the building erected to provide for a bar room with the usual fixtures.

When the building was approximately half completed, a zoning ordinance was adopted, effective April 14, 1949,[1] by the supervisors of the township which designated the district in which the hotel was being erected as a *Mixed Occupancy* district in which restaurants, grocery stores, hotels and club houses were allowed but provided that "No license for the dispensing of intoxicating liquor in any form is permitted." It is admitted that the only reason the Liquor Control Board refused the appellants a license for their hotel was the above provision of the zoning ordinance. It is important to note that the zoning ordinance in question by Section 1004 also provided, "Section 1004. Completion of Buildings. All structures started within six (6) months prior to the passage date of this ordinance and not in conformity therewith, shall be discontinued, provided, (1) No substantial construction has been made and construction is not prosecuted without delay and completed within a period of one year from date of enactment of this ordinance, or (2) No contract or contracts have been let."

---

[1] This zoning ordinance was adopted April 4, 1949, effective 10 days thereafter under the authority of the second class Township Code, Act of May 1, 1933, P. L. 103, Art. XX, Sec. 2001, as amended, 53 P.S. 19093-2001 pocket part.

Two questions were argued before us: (1) Whether the prohibition feature of the zoning ordinance was validly applied to appellants' hotel in process of erection at the date of the enactment of the zoning ordinance; (2) Whether the supervisors had the power by a zoning ordinance to regulate the conduct of the business of hotels by the provision forbidding a liquor license.

(1) On this first point it is admitted that there had been substantial progress in the construction of the hotel and considerable expenditures made and contracted for prior to the adoption of the ordinance. Retroactive legislation is so offensive to the Anglo-Saxon sense of justice that it is never favored. A statute will not be given a retroactive effect unless such construction is required by explicit language or by necessary implication: *Painter v. Baltimore & Ohio R. R.*, 339 Pa. 271, 276, 13 A. 2d 396 (1940); or, as stated in Section 56 of Article IV of the Statutory Construction Act of 1937, P. L. 1019, 46 P.S. 556, "No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature." These rules are equally applicable to ordinances of the municipal subdivisions. There is no room for speculation here because the Supervisors showed a commendable intent to make the ordinance prospective, not only as to *completed* structures but also as to those in course of construction diligently pursued to completion. It should be remarked also that the Township authorities interposed no objection to appellants' application and took no part in these proceedings to oppose the issuance of the license. In fact, the record shows they virtually conceded the ordinance was inapplicable to the particular building involved in this appeal.

However, the learned judge of the Quarter Sessions Court took the position that as the ordinance does not

forbid the appellants' occupancy of the building as a hotel and that a liquor license is not an indispensable feature of a hotel, appellants have no just cause of complaint. This we think is far too narrow a view to take of the matter. Whether a hotel as defined by the authorities quoted from other states cited by the learned court technically includes the feature of providing liquor accommodations for guests is beside the point. A hotel is merely a name derived from the French for an inn and the two are regarded so far as the transaction of business is concerned as synonymous. An inn always connoted a place where travellers or sojourners were provided with the accommodations of lodging, food and drink,[2] or as characteristically put in the old days, "entertainment." 19 Words & Phrases 672. Nor is the modern hotel much different. It may be larger and more elaborate but the services rendered to guests remain essentially the same. Especially is this true of a summer resort hotel which is of the class to which the hotel here conforms. In *Wellsboro Hotel Company's Appeal*, 336 Pa. 171, 173, 7 A. 2d 334 (1939), we said, speaking through Mr. Justice BARNES, "It is a part of the time-honored business of a hotel or inn to provide those who seek lodging with food and *refreshment*."[3] (Italics supplied.) That the accommodation of the service of liquor refreshment is usually regarded to be largely inseparable from a modern hotel (except in prohibition states or areas) is indicated by the Pennsyl-

---

[2] Thus, Shakespeare, in 1 Henry IV, Act III, Scene 3, pictures the old time Inn in the following colloquy: "Hostess: You owe money here besides Sir John for your diet and by drinkings and money lent you, four and twenty pounds. Falstaff: I'll not pay a denier. What, will you make a younker of me? Shall I not take mine ease in mine inn—?"

[3] Also characteristically used as an abbreviation of *liquor* refreshment in the older cases.

vania Liquor Control Law itself, which makes it mandatory[4] upon the Board to grant a license if the hotel structure conforms to physical requirements established by the act and the applicant complies with the regulations and is of good repute. Moreover, such licenses are expressly exempted from the quota law.

However, the real question is not whether a liquor license is *indispensable* but whether it may be regarded as a customary accommodation to the guests as well as a substantial source of revenue to the proprietors of the hotel. Neither furnishing of food nor a cigar or magazine counter are strictly indispensable but they are everywhere regarded as auxiliary accommodations that serve to make a hotel attractive to guests which in turn makes for a profitable business. Indeed it is well argued that the appellants would never have constructed this hotel if they had known that so customary a feature of their proposed business with its substantial contribution to the income would be prohibited. And there is testimony in the record to that effect. In the circumstances we hold that the ordinance because of the exemptions contained in Section 1004, cannot reasonably be applied to appellants' hotel.

In view of the position we have taken on the first proposition, it is, strictly speaking, unnecessary to pass on the second question argued. That question is, in effect, whether a municipality may in the guise of a

---

[4] Prior to the Amendment of May 20, 1949, P. L. 1551, Sec. 2, 47 P.S. 744-404 (pocket part) no appeal was allowed from the Quarter Sessions Court so that this question was not ruled on by the appellate courts of this state. However, there is an abundance of lower court authority so interpreting the hotel license section of the act, among which are *Chancellor Hall Corporation*, 53 D. & C. 83 (1945) (Philadelphia County) ; *Yarosz's License*, 47 D. & C. 404 (1943) (Beaver County) ; *Popp's License*, 41 D. & C. 500 (1941) (Erie County) ; *In re: Application of Hillside Hotel*, 20 Leh. L. J. 146, 57 York 147 (1942) (Lehigh County).

zoning ordinance restrict in an area where a business is permitted, a part of that business. Since this question is important to the public and lest our silence be interpreted as an approval of what the courts below have said on the subject, we feel some comment is necessary.

Conceding that a zoning ordinance may properly exclude hotels and taverns, like any other business, entirely from a residential area, as was done in *Kingston Borough v. Kalanosky*, 155 Pa. Superior Ct. 424, 38 A. 2d 393 (1944) and *Veltri Zoning Case*, 355 Pa. 135, 49 A. 2d 369 (1946), an entirely different question is presented when it is attempted to regulate the details of a hotel business which it permits in the zone where state legislation has filled the entire field of liquor regulation. We think that such regulation is improper. We are unable to agree with the learned judges of the Superior Court that the instant case is ruled by the cases cited in their opinion in which sales of liquor are either prohibited by a restriction in a deed,[5] or by the unrepealed Act of Assembly of 1881,[6] forbidding such sales where connected with a place of amusement.

Zoning ordinances, interfering as they do with the free use of property, depend for their validity on a reasonable relation to the police power: *White's Appeal*, 287 Pa. 259, 134 A. 409 (1926); *Lower Merion Twp. v. Frankel*, 358 Pa. 430, 433, 57 A. 2d 900 (1948). An ordinance, for example, if it permitted a butcher shop to be located in an area but prohibited its sale of pork, or a drugstore but prohibited its sale of candy, or a grocery store but prohibited its sale of bread,

---

[5] *Cheris's Liquor License Case*, 127 Pa. Superior Ct. 355, 193 A. 162 (1937).

[6] Act of July 9, 1881, P. L. 162, 47 P.S. 181; *Shibe's Case*, 117 Pa. Superior Ct. 7, 177 A. 234 (1935); *Oriole's Liquor License Case*, 146 Pa. Superior Ct. 464, 22 A. 2d 611 (1941).

would surely be regarded as unreasonable legislation on details of a business not a matter of public concern. If it may prohibit a hotel from dispensing liquor, it can well forbid it selling meals, or cigars or candy, or newspapers. Zoning ordinances may not, be used for such purposes.

If it be argued that dispensing of liquor has a reasonable relation to police power, the answer is that even so municipalities may not invade the field of regulation which the State legislature has completely filled by its comprehensive liquor control act, an act that provides ample means to all communities to obtain prohibition at their option by vote of the people thereof: Act of June 16, 1937, P. L. 1762, 47 P.S. 744-501, 502. A municipality may not in the guise of a zoning ordinance *regulate* the business of dispensing liquor.

The orders of the Superior Court and the Quarter Sessions Court of Erie County are reversed.