## Reed v. Borough of North Wales

*Brunner & Conver*, for appellant.

*High, Swartz, Flynn & Roberts*, for Borough of North Wales.

FORREST, J., April 30, 1952.—Irene K. Reed, owner of the premises 146 Main Street, Borough of North Wales, Montgomery County, Pa., requested a building permit from the building inspector of that borough

to allow her to alter the premises for the purpose of making it legal and suitable for the operation of a restaurant liquor licensee.

The permit was refused by the building inspector on the ground that the use was not in compliance with section 600-12 of the Borough of North Wales Zoning Ordinance of February 20, 1950, which provides:

"Section 600. A building may be erected, altered or used and a lot or premises may be used, for any of the following purposes and for no other: 12. Hotel, saloon, or taproom when authorized as a special exception."

On November 8, 1951, petitioner filed an appeal to the board of adjustment requesting a special exception in compliance with section 600-12, previously quoted, and 901(b), providing as follows:

"Section 901. The Board of Adjustment shall have the following powers: (b) To hear and decide special exceptions to the terms of this Ordinance in such cases as are herein expressly provided for, in harmony with the general purpose and intent of this Ordinance, with power to impose appropriate conditions and safeguards."

On November 28, 1951, a hearing was held by the board of adjustment and the request for the special exception was refused.

On December 18, 1951, an appeal was filed from the decision of the board of adjustment and a writ of certiorari was directed to the Borough of North Wales Zoning Board of Adjustment by Judge William F. Dannehower.

On February 19, 1952, a hearing was held before the writer of this opinion.

### Findings of Fact

1. Petitioner, Irene K. Reed, is the owner of the premises known as 146 Main Street, Borough of North Wales, Montgomery County, Pa., having acquired title to the property on November 19, 1951.

2. Petitioner and her husband had operated a restaurant and bar at 123 Main Street, North Wales, for about 18 years prior to the death of petitioner's husband in 1951; thereafter, she continued to operate at that location until December 1951, when she was given notice to vacate the premises by the owner, who decided to transform the property into offices. It was for this reason that petitioner purchased the property in question.

3. Property 146 Main Street, Borough of North Wales, is in the district zoned "business" under the zoning ordinance of February 20, 1950.

4. Section 600-12 of the zoning ordinance provided, as has been pointed out, that in order for a property to be used for a "hotel, saloon or taproom", authorization therefor must be given as a special exception by the board of adjustment.

5. At the hearing before the board of adjustment there were in attendance 60 objectors and at least 14 testified, one of whom stated that he had a petition signed by 250 objecting taxpayers of North Wales, which he intended to present to the Pennsylvania Liquor Control Board. This witness' testimony, as well as that of the rest of the objectors, emphasized their protest against any licensed establishment primarily from the nuisance angle, the following comments being typical: "I think it is unfair to ask the people in this location to stand for another one in the same area." "It is a matter of nearness on three counts: nearness to this social club and fire company, of which we have been speaking, nearness to the railroad, and nearness to our church."

6. The witnesses also objected on the ground that, in their opinion, it would increase traffic in this neighborhood, and, therefore, cause hazards. The same type of testimony was adduced at the hearing before the

court, the protestants being quite vehement in their objections.

7. Immediately across the street from the property involved is a fire company which has a club license and there is a club license also held by the American Legion, which is in the next block. Protestants testified they are annoyed by the conduct of the frequenters of these places. They were not able to state definitely as to whether those responsible for the annoyance received their stimulants from one place or another.

8. There have never been any complaints to the authorities concerning the operation of the restaurant license by the applicant and her husband for the last 19 years.

9. The public utility bus and the school bus have a "stop" immediately in front of the premises and a railroad runs along the intersecting street.

10. In refusing the application, the board of adjustment took the position that to grant the application would be to aggravate the present traffic condition at this point and stated further:

"In addition, past experiences as presented to the board by the witnesses show that a liquor establishment, at least in this area, is bound to cause trouble." Several of the witnesses told of their difficulties with intoxicated people coming from other nearby establishments and of the loud and obscene language used by such persons in the late night and early morning hours.

### Discussion

It is fundamental that the court of common pleas should not disturb the decision of the board of adjustment, which has refused to grant a special exception, unless the decision amounted to an arbitrary use or exercise of power or a flagrant abuse of discretion, or was based on a mistaken apprehension of the law:

Liggett's Petition, 291 Pa. 109 (1927); Gilfillan's Permit, 291 Pa. 358 (1927). The powers of the board of adjustment in this regard are set forth in the zoning ordinance in section 901(b), as previously recited, which, of course, is in conformity with the enabling Act of July 10, 1947, P. L. 1621, added to The Borough Code of May 4, 1927, P. L. 519, as amended, 53 PS §15211.7.

The character of the testimony, as well as the decision of the board, makes it manifest that the same comment could, and probably would, be made in regard to any application of *any* hotel, saloon, or taproom. If it is on this basis that the board of adjustment came to its conclusion, it has done so illegally, since a board of adjustment has no power to legislate, and it would be legislation for it to decide that in no case would it allow a hotel, saloon, or taproom in a business district. The ordinance permitted it as a special exception. Of course, council, by appropriate zoning ordinance, could have excluded this sort of business from a business district, but this was not done. The door was left open so that the board of adjustment could grant a special exception in a proper case. Further, the voters of the Borough of North Wales could have prohibited this business under the "local option" provisions of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as amended, 47 PS §744-501 et seq.

It was quite apparent that the protestants and the board, in justification of their protest and decision, stated that the conducting of a restaurant liquor license in this location would seriously affect the hazards of traffic. This condition was based solely upon their own opinion. There is no substantiation of this charge by the testimony of experts, or even by those who should know the traffic conditions best, to wit, school authorities who conduct the school bus, the public utility officers who conduct the public bus, the

police officers who supervise traffic, or the members of council who hire the police officers. Probably this testimony should not have been admitted, since they were all conclusions and opinions from nonexperts. However, their admission without objection certainly does not dignify the evidence with the same degree of conviction as admissible evidence would command.

We are not closing our eyes or ears or our sense of the reality in refusing to countenance the annoyances, inconveniences, and torments which accompany the living in the neighborhood of a place where intoxicants are dispensed. We sympathize with those who are so situate. However, our sympathies cannot control our decisions, and neither should the sympathies of the board control theirs. The control of such matters is in the hands of the council and the people themselves, as has been pointed out heretofore.

It is apparent that the board's decision was a forced one, which is natural and instinctive, especially in view of the fact that they were faced with 60 adamant, if not angry, objectors.

"The board should, of course, hear and consider the protest of interested citizens, but the fate of an application for a special exception should not rest alone on the number of protests against it. If the application is meritorious it should be granted regardless of protests": Nugent v. Whitemarsh Township, 68 Montg. 98 (1952).

In Lindquist Appeal, 364 Pa. 561 (1950), the Supreme Court said, at page 565:

"It is clear that a board of adjustment does not properly exercise its discretion if it considers the number of protestants, rather than the nature and quality of their objection."

It is incumbent upon this court, to whom aggrieved petitioner has appealed, to determine under the law, whether this action of the board was arbitrary and

contrary to the weight of the evidence. Again, at page 566:

"If the board's determination is shown to be arbitrary and contrary to the weight of the evidence, the court is authorized and should make its own ruling. . . ."

It no doubt was much easier and more popular for the board to follow the public demand, and more especially in view of the fact that to a lay mind the circumstances compelled this determination. This is pointed out by Judge Corson in Carbide and Carbon Chemicals Appeal, 65 Montg. (1949), at page 175:

"Assuming for the moment that a special exception is required, a reading of the record can sustain but one finding and that is that the members of the board apparently injected their personal feelings. . . . This, of course, the board members, individually or collectively, do not have the power to do."

The unreasonableness of the board's decision is made all the more clear when it is observed that an apartment house or storage garage could have been erected at this location, since both are permissible under class C residential, which in turn makes them permissible in this district, the "business district", under section 600-1. It cannot be gainsaid that the use of this location as an apartment house or a storage garage would cause more traffic than the use here proposed.

It should be borne in mind, in arriving at a correct decision in this matter, that there was no definite evidence that the operation on the part of the applicant of the taproom in the same block at 123 Main Street was anything but legal and proper. It might have been a different case had there been definite evidence that the applicant had improperly conducted her business at the other site, or had been guilty of any violations of the Liquor Control Act, or the regulations imposed thereunder by the Pennsylvania Liquor Control Board, seriously affecting the health, welfare, or morals of the

community. It would present an entirely different picture. Such is not the case here, nor is there any presumption that this establishment will be run improperly. In fact, the presumption is to the contrary, since any improper operation would be illegal under the Liquor Control Act, and, it will not be presumed that one will violate the law.

It has been pointed out by Judge Knight, a widely recognized authority in this field, in speaking for this court in Township of Lower Merion et al. v. Frankel, 64 Montg. 14 (1947), at page 33 (affirmed in 358 Pa. 430 (1948)), that traffic increase in itself is not a compelling factor to be considered in a zoning case. See also Young Men's Christian Association Appeal, 68 Montg. 175 (1952). Paraphrasing what President Judge Knight recently said in that appeal:

"In our opinion the grant of a special exception would be fully in harmony with the purpose and intent of the zoning ordinance and the denial of a special exception was an arbitrary exercise of power and a flagrant abuse of discretion on the part of the board."

If the board of adjustment has the power to refuse a special exception in this case, they could do so in every case, however metritorious, and if it has that power in every case, it has the power to legislate, which, of course, it does not have. Furthermore, in the recent case of Sawdey Liquor License Case, 369 Pa. 19 (1951), the Supreme Court said (page 26) : "A municipality may not in the guise of a zoning ordinance *regulate* the business of dispensing liquor." So that, if the borough, through its council, cannot do so, the board of adjustment, an agency of the council, cannot do so.

And now, April 30, 1952, the decision of the Board of Adjustment of the Borough of North Wales, in the above-captioned matter, is reversed. The record is

remanded to the board with instructions to grant the special exception applied for.

Since the case was heard by one judge only, exceptions may be filed to the above order within 10 days of the date hereof. If no exceptions are filed, the above order shall become the final judgment of the court.