## Paxtang Borough Board of Adjustment v. Arnold

*Wm. M. Young, K. B. Martindale,* for appellant.

*George W. McKee,* for zoning board.

*Paul J. Smith,* for protestant.

KREIDER, J., September 12, 1955.—This is an appeal by Spencer W. Arnold, a licensed funeral director, from an order of the Board of Adjustment of the Borough of Paxtang, which approved the refusal of its building inspector to permit appellant to remodel a building, 3111 Brisban Street, Paxtang, and to use the same for a funeral home. This building is located in a class R-2 residential district under article IV, sec. 401-1, of the Paxtang Borough Zoning Ordinance of 1945, as amended in 1947.

No testimony was taken before this court because all the essential facts appear in the 40 pages of testimony and 10 exhibits introduced at the hearing before the board which, together with the board's findings of fact, discussion and conclusions of law, constitute the pertinent part of the record certified to us. At the board's hearing five persons, including four adjacent property owners, appeared *in support of appellant's application* and one opposed it.

The board's findings of fact, inter alia, are as follows:

"4. The said tract of land contains approximately 29,700 square feet, of which approximately 1,953 square feet is occupied by a building. The said building is located on the western end of the said tract and faces Apple Alley, an unopened alley parallel with Derry Street and lying between Derry Street and Brisban Street in the Borough of Paxtang. There are no residences on Apple Alley facing the said premises.

"6. The building on the premises involved in this proceeding is a two-story (with attic) brick, L-shaped building· The balcony on the north side thereon is completely rotted and its present condition is dangerous. The chimney thereon has not been maintained and is in dangerous condition. The building has not been painted for many years nor have the grounds thereon been maintained in any manner. The appearance of the said building is a marked detriment to the neigh-

borhood. (Personal examination by members of the Board of Adjustment)

"7. . . . . The said repairs will result in beautification of the said premises and marked increase in the value thereof."

In a two to one decision, the board sustained the denial of the permit on the ground:

"1. The conduct of a funeral parlor is not a profession but is a business, and hence not permitted under the Zoning Code of the Borough of Paxtang in Zones R-1 or R-2.

"2. There are no special conditions existing in the present case to justify the granting of an exception or a variance to the appellant."

In a dissenting opinion, the chairman of the board, William J. Madden, Jr., Esquire, stated:

"I agree that a literal enforcement of the provisions of the Zoning Ordinance in this case will not result in unnecessary hardship to either the appellant, who has contracted to purchase the property, or to the present owners· It is my opinion, however, that owing to the special conditions here existing, the denial of a permit will result in unnecessary hardship to the public and in such case, a variance should be granted: Gish v. Exley, 153 Pa. Superior Ct. 653, 658 (1943). As has been said in the Appeal of Janks, 69 Montg. 87, unnecessary hardship, as used in the zoning law, does not necessarily have to apply to the present owner of the property, it can be hardship which is inherent in the property or the specific situation itself. To deny the permit in this case is directly contrary to the directive in the Zoning Code that it shall be so administered 'that the spirit of the ordinance shall be observed and substantial justice done' . . . There is ample testimony, and the board has determined by its own inspection, that the premises here under consideration is a detriment to the neighborhood; that if appellant

is permitted to do so, he will improve the property so that it will be at least comparable to the surrounding area and that no alternative method of eliminating the present condition is now available. This is a special condition producing an unnecessary hardship on the surrounding property owners and constitutes sufficient basis for the Board of Adjustment to grant a variance and a refusal to grant such a variance under these conditions is an abuse of discretion on the part of the board."

We do not deem it necessary in this case to determine whether the board abused its discretion, even though the dissenting opinion of its chairman may possibly be supported by some of the more recent decisions. See Dooling's Windy Hill, Inc., v. Springfield Twp. Zoning Bd. of Adjustment, 371 Pa· 290 (1952), Sawdey Liquor License Case, 369 Pa. 19, 25, 26 (1951); Lindquist Appeal, 364 Pa. 561 (1950) and distinguishing Devereux Foundation, Inc. Zoning Case, 351 Pa. 478 (1945), upon which the board of adjustment in the instant case relies. See also Jank Appeal, 69 Montg. 87 (1953); Sunnybrook, Inc., v. Upper Dublin Twp., 75 D. & C. 385, 391 (1950).

We think the principal question to be decided is whether the board of adjustment erred in affirming the building inspector who refused to issue the permit because, in his opinion, the practice of a funeral director is a business not permitted in an R-1 or R-2 residential district. The refusal was based on article IV, sec· 401-1, of the zoning ordinance which relates to R-2 residential districts and provides:

"A building may be erected, altered, or used, and a lot or premises may be used for any of the following purposes and for no other: 1. Any uses permitted in R-1 Residential Districts. 2. Dwellings having not more than one wall in common with another building. 3. Accessory use on the same lot, . . ."

The uses permitted under section 301 in R-1 residential districts are:

"1. Single family detached dwelling. 2. Educational, religious, or philanthropic use, excluding hospital, sanatorium, or correctional institutions. 3· Municipal recreational use. 4. *A professional office* or studio provided that said office is located in a dwelling or in a building accessory to a dwelling and, further provided, that no goods, wares, or merchandise are publicly displayed or sold on the premises, and no sign or advertisement is shown other than the name and occupation of the person using the office. 5 Accessory use on the same lot with and customarily incident to any of the above permitted uses and not detrimental to a residential neighborhood, including a private garage. 6. Fire Station. 7. Telephone Central Office." (Italics supplied).

The Funeral Director Law of January 14, 1952, P. L. 1898, 63 PS §479.1, provides:

"Section 2. Definitions. . . .

"(1) The term 'funeral director' shall include any person engaged in the profession of a funeral director or undertaking or the care, embalming, disposition or burial of the bodies of deceased persons, in his or her own name and on his or her own account, whether such persons shall use the title of 'undertaker,' 'undertaker and embalmer,' 'embalmer,' 'funeral director,' 'mortician', or other term.

"Section 3. Application for License; Qualifications of Applicants.—(a) Any person not holding a license to practice the *profession of a funeral director* and desiring to practice such *profession* in this Commonwealth shall make application for examination and licensure to the board, upon a form furnished by it, and shall accompany the application by such fee as may be fixed by the department." (Italics supplied).

The Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §502, in article IV, sec. 51, 46 PS §551, provides:

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

In Orlosky v. Haskell, 304 Pa. 57, 62 (1931), the Supreme Court of Pennsylvania cited with approval the following from section 4 of the late Judge Endlich's authoritative work on Interpretation of Statutes:

" . . . 'The legislature must be intended to mean what it has plainly expressed, . . . It matters not, in such a case, what the consequences may be. . . . Where, by the use of clear and unequivocal language, capable of only one meaning, anything is enacted by the legislature, it must be enforced, even though it be absurd or mischievous. If the words go beyond what was probably the intention, effect must nevertheless be given to them. . . . Its [the court's] duty is not to make the law reasonable, but to expound it as it stands, according to the real sense of the words': . . ."

In deciding whether appellant is entitled to a building permit under section 301 of article III of the borough zoning ordinance, which provides that "a building may be erected, altered or used, and a lot or premises may be used for any of the following purposes, but for no other: . . . 4. A professional office or studio provided that said office is located in a dwelling or in a building accessory to a dwelling . . .", we must apply the canons of construction above stated to the Funeral Director Law of January 14, 1952, supra. We note in the Funeral Director Law that the word *"profession"* as applied to a funeral director, is used *16 times*, the word "unprofessional" once and the word "business" 8 times. In section 2 thereof the term "funeral director" is specifically defined to include any person engaged in the *profession* of a funeral director

or undertaker and in section 3 reference is made *twice* to the *practice of the profession* of a funeral director.

Other expressions are found in the act relating to the "conduct or carrying on of the profession" and the "practice of the profession". It is true that section 8 is entitled "Conduct of Business". This section provides, inter alia, that upon the death of a licensee the board in its discretion may issue a license or a renewal thereof to his estate for a period not exceeding three years or to the widows of deceased licensees as long as they remain unmarried. We think, however, that the word "business" as used in this act refers primarily to the manner in which a licensed funeral director shall practice his profession.

We believe any reasonable consideration of the whole problem before us must lead to the conclusion that in the practice of any profession, business is a necessary corollary. The bench and bar are composed wholly of professional persons, yet the Pennsylvania Rules of Civil Procedure devote an entire section to "The Business of Courts": Pa. R. C. P. 201-250, inclusive. In Sterling v. Philadelphia, 378 Pa. 538 (1954), it was held that attorneys are subject to the Philadelphia City Mercantile Tax under an ordinance imposing a tax on "certain businesses", including, inter alia, "professions, occupations and vocations". Despite that decision it cannot be contended that Philadelphia lawyers have lost their *professional* standing.

It appears that one of the purposes of the act is to clarify the definition of "funeral director" so as to include his practice among the various professions. This view is strengthened by contrasting the definition of "funeral director" in the Funeral Directors Law with that of "undertaker" in the Undertakers Act of June 10, 1931, P. L. 485. The latter provides in section 1(a) : "The word 'undertaker' shall include any person engaged in the *business* or profession of undertak-

ing, or the care, embalming, disposition or burial of the bodies of deceased persons. . . ." *It is significant that the term "business" does not appear in the definition of "funeral director" in section 2 (1) of the Funeral Directors Law, supra.*

The word "profession" was construed by our Supreme Court in the leading case of Howarth v. Gilman, 365 Pa. 50 (1950). In considering the Professional Engineers Act of May 6, 1927, P. L. 820, 63 PS §131 et seq., as amended, the Supreme Court in an opinion written by Mr. Chief Justice Drew said, 56-57:

"The Act of 1927, supra, has headnoted as its purpose the regulation of the *practice of the profession* of engineering and this has been reiterated in section 1 where the prohibition against practice without a license has been confined to the practice of the profession of engineering. It follows that, in interpreting the definition in Section 2, the words 'civil engineering', 'mechanical engineering', etc., *must be read as the 'profession of civil engineering'*, 'profession of mechanical engineering', etc. The result is a distinguishing of the type of engineering work which the legislature sought to regulate and that work of an engineering nature performed by technicians or artisans who are commonly designated skilled laborers. For the word *'profession'* connotes something more than mere skill in the performance of a task. It has been defined by the courts in numerous opinions, the most comprehensive of which may be found in U. S. v. Laws, 163 U. S. 258, and in Webster's New International Dictionary as: 'The occupation, if not purely commercial, mechanical, agricultural, or the like, to which one devotes oneself; a calling in which one professes to have acquired some special knowledge used by way either of instructing, guiding, or advising others or of serving them in some art'. Although is is evident that an exactingly accurate definition of the word 'profession' which will preclude

the possibility of any controversy, is impossible, whatever uncertainty may be said to arise from the proper interpretation, as demonstrated above, of the words contained in Section 2 is the result of the definitive limitations of our language and is therefore not unreasonable. It is settled law that legislation will not be held invalid on the ground of uncertainty, if susceptible of any reasonable construction that will support and give it effect. . . ." (Italics supplied).

We believe the Supreme Court's construction in the Howarth case of the word "profession" as it appears in the Professional Engineers Act, supra, controls the construction of "profession" in the Funeral Director Law and the Paxtang Borough Zoning Ordinance of 1945 as amended.[1]

The board relies upon Hampton v. Norristown Board of Adjustment, 72 D. & C. 270, Montg. Co., decided May 6, 1950. The principal point in that case was that appellant could not be granted permission to operate an undertaking establishment in a "Class B" residential district because he was not entitled to an "exception" or a "variance" due to "unnecessary hardship" within the meaning of the borough code, although undertaking establishments were permitted specifically in "C" and "D" residential districts.

The court also held that the carrying on of an undertaking business is not a profession although it stated, "there appears to be no case in Pennsylvania passing upon the question". It based its conclusion on this point, however, on two grounds, (1) that applicant evidently did not regard his occupation as a profession

---

[1] It may be noted that section no. 163 of the borough ordinance entitled "General Definition" provides that "the commonly accepted meaning of a word as given in Merriam's Webster's Unabridged Dictionary is the use intended for the purpose of this Ordinance", and that identical definitions of the word "profession" appear in the dictionary mentioned in the ordinance and in the opinion of the Supreme Court in the Howarth case at page 57.

as such since he asked for permission to operate an undertaking "business" and (2) despite the lack of Pennsylvania cases on the subject, ". . . there are many cases in other jurisdictions holding that an undertaking business is not a profession. See Babcock v. Laidlaw, 113 N. J. Eq. 318, 166 Atl. 632, 633 (1933) ; Busse & Borgmann Co. v. Upchurch, 60 Ohio App. 349, 21 N. E. (2d) 349, 352 (1938) ; Building Commissioner Of Brookline v. McManus, 263 Mass. 270, 160 N. E. 887 (1928) ."

We have considered the authorities cited by the board but find no other Pennsylvania case which squarely supports its position. In any event, they are of no avail because all of them arose prior to the Funeral Director Law and the Howarth case which was decided May 22, 1950.

Furthermore, we cannot adopt the contention that a funeral home is not "a professional office" for zoning purposes. If the board's contention in this respect is correct, a physician might be permitted to have "an office" in a zoned district but could be prohibited from administering drugs or using necessary instruments in the treatment of his patients therein. Surely such a result could not have been intended by those who enacted the ordinance.

In Sawdey Liquor License Case, 369 Pa. 19 (1951), the Pennsylvania Liquor Control Board had refused appellants a license for their hotel on the sole ground that a local ordinance provided that: " 'No license for the dispensing of intoxicating liquor in any form is permitted' ". The Erie County Court affirmed on the ground that as the ordinance did not forbid the occupancy of the building as a hotel and that a liquor license is not an indispensable feature of a hotel, appellants had no just cause of complaint. In reversing the Superior Court which had affirmed the lower court, the Supreme Court said, page 23: *"This we think is*

*far too narrow a view to take of the matter"*, and further stated at pages 25-26:

"Zoning ordinances, interfering as they do with the free use of property, depend for their validity on a reasonable relation to the police power: White's Appeal, 287 Pa. 259, 134 A. 409 (1926) ; Lower Merion Twp. v. Frankel, 358 Pa. 430, 433, 57 A. 2d 900 (1948). An ordinance, for example, if it permitted a butcher shop to be located in an area but prohibited its sale of pork, or a drugstore but prohibited its sale of candy, or a grocery store but prohibited its sale of bread, would surely be regarded as unreasonable legislation on details of a business not a matter of public concern. If it may prohibit a hotel from dispensing liquor, it can well forbid it selling meals, or cigars or candy, or newspapers. Zoning ordinances may not be used for such purposes." (Italics supplied.)

The Paxtang Borough Zoning Ordinance might have been enacted or amended to exclude the practice of the profession of funeral director or the operation of a funeral home in R-1 and R-2 residential districts: Rick v. Cramp, 357 Pa. 83 (1947). It did not do so. It might have permitted therein certain, professions and prohibited others, or designated certain professional and business activities. It has not done so. The ordinance permits applicant to operate "a professional office or studio" under certain conditions in an R-2 residential district. *The legislature has made his occupation a profession.* What was said by Mr. Chief Justice Horace Stern, speaking for the Supreme Court in Sterling v. Philadelphia, 378 Pa. 538, at page 542, is appropriate here:

". . . A legislative body may, in a statute or ordinance, furnish its own definitions of words and phrases used therein in order to guide and direct judicial determination of the intendments of the legislation although such definitions may be different from ordi-

nary usage; it may create its own dictionary to be applied to the particular law or ordinance in question. . . ."

For the foregoing reasons we sustained this appeal and directed in our order of August 31, 1955, that a building permit be issued to Spencer W. Arnold in accordance with his application for the same.