## Quakertown Borough v. Richland Township

*Rodney D. Henry*, for plaintiff.
*Richard A. Rosenberger*, for defendants.

LUDWIG, *J.*, March 9, 1976—This court, sitting en banc, denied the motion for summary judgment of plaintiff, Quakertown Borough, and thereafter, under the single-judge procedure of Bucks County R.C.P. \*266, we sustained the preliminary objections of defendants, Richland Township, its supervisors and zoning officer-building inspector, and dismissed the complaint in mandamus. Plaintiff's appeal followed.

Quakertown Borough owns a 3.7-acre tract of land located directly across its boundary line in Richland Township. The relief sought by this mandamus action is a decree compelling the issuance of zoning and building permits to use the property for what the complaint describes as a "public solid waste incinerator and/or trash facility." Richland Township's zoning officer-building inspector refused the borough's application for these permits because the proposed use violated the township's zoning and subdivision ordinances and its building code.[1]

The complaint states that Quakertown Borough intends to lease the property, the construction and operation of the waste disposal unit to be in the

1. The zoning classification of the property under the Zoning Ordinance of Richland Township of January 1972 (repealed June 18, 1975) was "Residential Conservation," which permitted certain agricultural uses, single-family detached dwelling, conversion to two-family units by special exception, mobile homes, planned development for single-family detached dwelling, religious activity, schools, community centers, public buildings and fire station. A sanitary landfill or incinerator was not permitted. Such use was permitted by special exception in a "Residential Agricultural" classification, subject to certain conditions. According to the pleadings, Quakertown Borough initially applied to the Richland Township Zoning Hearing Board for a variance but later withdrew the application.

hands of an enterprise consisting of itself and the Boroughs of Sellersville and Perkasie, pursuant to the Act of July 12, 1972, P.L. 454 (No. 180), 53 P.S. §481, et seq., relating to joint municipal activities. The complaint also alleges that the disposal unit is urgently needed by these municipalities in order to carry out the mandate of the Pennsylvania Solid Waste Management Act of July 31, 1968, P.L. 788 (No. 241), 35 P.S. §6001, et seq. However, the sole issue presented to us was whether Quakertown Borough as the owner of a property situated in Richland Township may proceed to make use of it for this purpose without being subject to the substantive provisions of the township's zoning, building and land development ordinances.

Plaintiff's main argument is founded on its construction of section 702 of The Second Class Township Code of May 1, 1933, P.L. 103, art. VII, as added by the Act of August 27, 1963, P.L. 1280, sec. 1, 53 P.S. §65762, which states: "No ordinance . . . shall be adopted which in any manner restricts, interferes with, hinders or affects the operation of any other political subdivision or instrumentality of the Commonwealth . . ." Under the Statutory Construction Act of November 25, 1972, "political subdivisions" includes a borough: 1 Pa. C.S. §1991.[2] Accordingly, says plaintiff, the township's ordinances should not be allowed to impair its operations, in this instance, the disposal of solid waste.

We did not regard the issue as that simplistic. The prohibition of section 702 clearly pertains only to a township's interference with the operations of "other political subdivisions" that constitute the

---

2. This section defines political subdivision as "[a]ny county, city, borough, incorporated town, township, school district, vocational school district and county institution district."

exercise of lawful authority and proper function. See Greater Greensburg Sewage Authority v. Hempfield Township, 5 Pa. Commonwealth Ct. 495, 503, 291 A. 2d 318 (1972) (Rogers, *J.* concurring). Cf. School District of Philadelphia v. Zoning Board of Adjustment, 417 Pa. 277, 207 A. 2d 884 (1965). Not every endeavor of a political subdivision, regardless of its propriety or purpose, would appear to be ipso facto immune to the regulatory power of a township. What then is the authority of a borough as to activities carried on by it or for its benefit beyond its geographical limits? In dealing with inter-governmental relationships, obvious distinctions must be made according to the hierarchical rank of the political subdivisions involved and the nature and location of the activity or area to be pre-empted.

On the subject of competing municipalities (Middletown Township v. Delaware County Institution District, 450 Pa. 282, 299 A. 2d 599 (1973)), which plaintiff heavily relies on, does not supply the answer. It describes the purpose of section 702 as protecting *"state and county agencies* [from] the preferences and prohibitions of every township's local zoning and building regulation in the Commonwealth." 450 Pa. at 288. (Emphasis supplied.) It distinguishes School District of Philadelphia, supra, in that there the school district and city were "two geographically coterminous municipal bodies . . . [But] [h]ere . . . a township . . . versus those of a countywide agency." 450 Pa. at 290. If anything, the inference to be drawn is contrary to plaintiff's position: A township's exercise of zoning power over another municipality's extra-territorial operations was not intended to be

proscribed by section 702. No case to our knowledge has addressed itself to this question.

Plaintiff referred to two other decisions. In D'Lauro Company v. Bensalem Township, 23 Bucks 172 (1972), we held unlawful, as a violation of section 702, the assessment of a building permit fee on construction work being done for the State Public School Authority. The easily resolved conflict there was between a township and a creature of the State, the public school system, performing a State function.

Greater Greensburg Sewage Authority, supra, is more germane since it concerns the relationship between the Solid Waste Management Act, supra, and the power of local zoning. But, factually, it is not that helpful. It determined that the operation of plaintiff's sewage authority was a valid nonconforming use and, as such, did not violate the use provisions of the zoning ordinance of Hempfield Township. The township had also enacted an ordinance governing the "place and method" of solid waste disposal, and this ordinance was found by the Commonwealth Court to be unconstitutional. "[T]he enactment by the General Assembly of the . . . Pennsylvania Sewage Facilities Act[3] . . . known as the Pennsylvania Solid Waste Management Act, resulted in a limited preemption of the field of regulation of sewage facilities operations. . . . It follows that no municipality may enact an ordinance with provisions conflicting with a statute enacted by the legislative as to the requirements for licenses." 5 Pa. Commonwealth Ct. at 501.

3. Act of January 24, 1966, P.L. (1965) 1535, 35 P.S. §750.1, et seq.

Greater Greensburg Sewage Authority, however, does not demarcate the limits of the pre-emption; and in his concurring opinion, Judge Rogers specifically notes that he does not concur "with the implication of the concluding paragraphs of the majority opinion that by reason of asserted preemption . . . a municipality may not impose zoning regulations upon an Authority's activity of dumping sludge or other solid waste." 5 Pa. Commonwealth Ct. at 503. The report of the case does not disclose the nature of the "Greater Greensburg Sewage Authority" as a governmental instrumentality, and the impact, if any, of section 702 is not discussed.

While the construction of section 702 in the present context and the extent of pre-emption effected by the Solid Waste Management Act raise issues of considerable importance, the resolution of them here is far from clear cut. We do not believe they should be decided in the present mandamus action for two principal reasons.

First, the power of a borough to purchase real estate for waste disposal purposes, both "within and without" the borough limits, originates in The Borough Code of February 1, 1966, P.L. (1965) 1656 (No. 581), sec. 2511, 53 P.S. §47511. Further, section 2512 of The Borough Code, 53 P.S. §47512, requires that a borough shall first obtain approval of the disposal site from the Court of Common Pleas, which shall, *upon objection*, "determine whether the location is a detriment to neighboring properties." These provisions of the code have not been expressly repealed; and the Solid Waste Management Act nowhere states an intention to occupy the field to the exclusion of the court's approval of the site or of local zoning. It is not unreasonable to project co-existing sets of regulations where the

interests created by different statutes are not incompatible or such separate controls unfeasible. See Upper Dublin Township Authority v. Piszek, 420 Pa. 536, 218 A. 2d 328 (1966); School District of Philadelphia v. Zoning Board, supra; Kingston Borough v. Kalanosky, 155 Pa. Superior Ct. 424, 38 A. 2d 393 (1944).

For Quakertown Borough to prevail in its argument based on section 702, interference by the township in its operations, it at least must legitimate its acquisition and use of a disposal site "without" the borough limits, and this it may do only by pointing to the authorization of The Borough Code. The Solid Waste Management Act, while encouraging intergovernmental programs and cooperation, empowers municipalities to contract with each other and with other entities in order to fulfill their waste management responsibilities. Id., section 6(c), 35 P.S. §6010(c). It does not authorize the obtaining of a site outside the municipality, although it requires the issuance of departmental permits for all sites.[4]

In 1973, this court was petitioned by the

---

4. Although we do not decide the question here, the Solid Waste Management Act appears to stand in the same relationship to local zoning as the Liquor Control Act. If so, a municipality may not in the guise of a zoning ordinance regulate the disposal of solid waste any more than it can regulate the dispensing of liquor. This is not to say that such uses must be permitted even in an area where commercial (or industrial) activity is generally excluded. In such instances, it is the commercial nature of the use, not the regulation of solid waste or sale of liquor, that is affected by the classification. See Spring Township v. Majestic Copper Corp., 435 Pa. 271, 256 A. 2d 859 (1969); Hilovsky Liquor License Case, 379 Pa. 118, 108 A. 2d 705 (1954); Sawdey Liquor License Case, 369 Pa. 19, 85 A. 2d 28 (1951).

Boroughs of Quakertown, Sellersville and Per-
kasie, pursuant to the provisions of The Borough
Code, for approval of the proposed disposal site
owned by Quakertown Borough in Richland Town-
ship: In re Matter of Proposed Tri-Borough In-
cinerator Site, No. 73-11235-02-6. At a hearing held
February 6, 1974, objections having been lodged by
Richland Township and by the Richland Township
Concerned Citizens Group, a consent order em-
bodying court approval was entered, "subject,
however, . . . and conditional upon the applicant's
[the three boroughs] *compliance with any and all
applicable Township Ordinances and regulations
including the Richland Township Zoning Ordi-
nance and the subdivision and land development
ordinance.*" (Emphasis supplied.)

As noted earlier, Quakertown Borough then
applied to the Richland Township Zoning Hearing
Board for a variance, but withdrew the application
and decided not to proceed via a zoning and build-
ing permit application. This change of direction
appears to have been made on the theory that its
rights ought to have been governed by the recently
decided Middletown Township v. Delaware County
Institution District, supra.

But if The Borough Code is to be given effect,
Quakertown Borough cannot now insist on its hav-
ing the power to conduct a disposal plant on its
property in Richland Township, on the one hand,
and reject the authority of the court to approve the
site, on the other. In this instance, such approval,
predicated on the consent order, included com-
pliance with the township's ordinances. Nor would
it make any sense for us to direct the issuance of
zoning and building permits as a matter of right in
this case. As the price for the withdrawal of objec-

tions so as to procure the requisite court approval of its choice of a location, Quakertown Borough itself agreed that the issuance of such permits was to be decided in the zoning forum of Richland Township.

Secondly, under The General State Authority v. The Borough of Moosic, 10 Pa. Commonwealth Ct. 270, 310 A. 2d 91 (1973), mandamus is not the proper remedy where governmental immunity from a zoning or other regulatory ordinance is claimed. "If the ordinance does not apply to plaintiff, then plaintiff does not need a permit." 10 Pa. Commonwealth Ct., at 271.[5]

These are our reasons in support of the orders refusing plaintiff's motion for summary judgment and sustaining defendants' preliminary objections and dismissing the complaint.

---

5. Instead, an action in equity may be available: Township of Lower Allen v. Commonwealth, 10 Pa. Commonwealth Ct. 272, 310 A. 2d 90 (1973).